No. 2--09--0808    Filed: 12-4-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ARLIE HEIDER, | ) | Appeal from the Circuit Court |
| | ) | of Jo Daviess County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 08--L--10 |
| | ) | |
| CARL F. KNAUTZ, | ) | Honorable |
| | ) | William A. Kelly, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

On July 29, 2009, the circuit court of Jo Daviess County entered an order compelling binding arbitration between the parties pursuant to the Illinois Uniform Arbitration Act (Act) (710 ILCS 5/1 et seq. (West 2008)). Defendant, Carl F. Knautz, appeals, arguing that because the parties did not enter into a written agreement to submit their dispute to arbitration, the Act does not apply, he was entitled to revoke his oral agreement to submit the dispute to arbitration, and the trial court erred in compelling arbitration. For the following reasons, we reverse and remand.

BACKGROUND

In April 2008, plaintiff, Arlie Heider, filed against defendant a complaint seeking damages for personal injuries plaintiff suffered as a result of a collision between plaintiff's and defendant's respective vehicles. Plaintiff alleged in his complaint that the collision was caused by defendant's

negligent and careless operation of his vehicle. Defendant filed an answer denying that the collision was his fault and alleging that the collision was a result of plaintiff's negligence.

Because plaintiff's attorney was located in Wisconsin and not licensed to practice in Illinois, plaintiff filed an application for admission of counsel pro hac vice. A status hearing was held on September 11, 2008, before Judge Kevin J. Ward, during which the application for admission pro hac vice was presented to the trial court. At that hearing, the subject of arbitration was raised and the following conversation ensued:

"THE COURT: Good morning, gentlemen. The matter is set for progress call today.

MR. HAHN [plaintiff's attorney]: That's correct. We were here two months ago, Judge, if you recall...um...there was some discussions [sic] regarding arbitrating this by agreement and we set this out and also there was a Pro Hoc [sic] Vice Motion that I had filed that was pending.

THE COURT: I do remember.

MR. HAHN: We have reached an agreement with regard to the arbitration and we've picked an arbitrator and we're going to proceed forward with that.

I guess perhaps that will obviate the need for the Pro Hoc [sic] Vice Motion if we're not going--if I'm not--if we're not going to proceed in the court.

From a procedural standpoint, I guess I would possibly request a stay of this case while that arbitration takes place.

THE COURT: Which on the basis of those things, it would ordinarily be my

expectation, of course, cart and horse with regard to Pro Hoc [sic] Vice but is that the understanding and is that what's sought to be done?

MR. RICHARDSON [defendant's attorney]: That's fine with me, Judge.

THE COURT: Would you like to have an order entered that formally states that the matter would be stayed pending arbitration, usually to a date certain (a progress call) at whatever period of time.

MR. HAHN: That's probably a good idea.

MR. RICHARDSON: That sounds reasonable.

THE COURT: And in the meantime probably not address the Motion for Pro Hac Vice?

MR. HAHN: That's fine, if that's the Court's...

MR. RICHARDSON: Correct.

THE COURT: Is that consistent with--is there anything else we can or should try to address today?

MR. RICHARDSON: No, that's it. We're pretty much committed to the arbitration (binding arbitration) so...

THE COURT: That sounds to me like the biggest part of the battle right there usually.

Why don't I make this suggestion, gentlemen; if you'd like to prepare an order that essentially says that the matter [is] stayed in favor of an arbitration agreement to whatever--has there been any discussion about an appropriate period of time?

MR. HAHN: Um...I think it could probably be accomplished fairly quickly, maybe four to six months, I would say would probably be sufficient.

MR. RICHARDSON: Right.

THE COURT: Alright, go out to about March, perhaps, for a progress call.

MR. HAHN: Sure.

MR. RICHARDSON: Sounds good, Judge.

CLERK: March 12th at 10:30.

MR. HAHN: Okay, that's fine.

MR. RICHARDSON: Okay.

THE COURT: If you'd be so kind, Counsel, as to prepare an order to that effect, we'll get that entered.

MR. HAHN: Great, thank you.

MR. RICHARDSON: Thank you."

Based on that discussion, defendant's attorney prepared, and the trial court signed, an order that read as follows: "This matter having come before this Court for Progress Call and Plaintiff's Motion Pro Hac Vice due notice given and the Court fully advised in the Premises[,] it is Hereby ordered: 1) This matter has been stayed pending binding arbitration between the Parties; 2) Plaintiff's Motion is entered and continued to March 12[,] 2008[,] at 10:30 a.m. at the next Progress call."

On June 30, 2009, defendant filed a motion for a protective order. In the motion, defendant alleged that during the course of discovery, he learned that in a subsequent car accident, plaintiff suffered a direct injury to the same knee he claimed to have injured

during the collision with defendant, despite plaintiff's previous representations that he had not reinjured his knee in the second accident. Defendant also alleged that due to a change in counsel, his attorney was unable to attend arbitration on the scheduled date and that plaintiff's attorney refused to reschedule and had indicated that he would attend arbitration even in defense counsel's absence. Defendant argued that a protective order preventing plaintiff from attending arbitration was necessary to allow defendant to complete discovery prior to any arbitration.

A hearing on defendant's motion was held on July 7, 2009, before Judge William A. Kelly. Defendant argued that he needed time to conduct additional discovery related to the cause of plaintiff's knee injury and that until that discovery was completed, defendant would be unprepared to participate in arbitration. Defendant also indicated that given the new information that had come to light regarding plaintiff's injury and given that the agreement to arbitrate was based on the representation that plaintiff had not reinjured his knee in the second accident, defendant was unsure whether he wanted to continue with binding arbitration. Defendant requested, however, only that the trial court stay arbitration for six months until he was able to depose plaintiff's treating physician and to acquire all of plaintiff's workers' compensation records. Plaintiff responded that defendant had known about the second accident from the beginning, that plaintiff had, in fact, been willing to reschedule the arbitration but received a limited response from defendant's attorney, and that defendant's attorney had agreed to reschedule the arbitration to July 17, 2009. Plaintiff also represented that he was concerned about delaying arbitration for too long because the statute of limitations to file a lawsuit based on the second accident would

expire in six weeks.

Following the parties' arguments, the trial court denied defendant's motion but gave the parties until August 30, 2009, to complete the additional discovery requested by defendant and to attend arbitration. The trial court also indicated that if defendant sought to withdraw from arbitration, he should file a motion for a determination of whether the agreement to arbitrate was revocable. Defendant stated that he desired to file such a motion, and the trial court set a hearing date of July 29, 2009, for that motion.

On July 20, 2009, defendant filed a "Motion for Judicial Determination Regarding Revocation of Oral Agreement to Submit to Alternative Dispute Resolution." In the motion, defendant argued that because the parties had not executed a written agreement to submit their dispute to binding arbitration, the Act did not apply and, thus, under the common law, defendant was free to revoke his agreement. Defendant requested that the trial court enter an order determining that defendant was entitled to revoke his agreement and setting the matter on the trial court's calendar. In his response to defendant's motion, plaintiff argued that under the Act, defendant's agreement to submit to arbitration was irrevocable. According to plaintiff, the Act did apply because during the September 11, 2008, hearing, defendant represented on the record that an agreement to arbitrate did exist and because the parties' agreement was reduced to writing in the trial court's September 11, 2008, order.

On July 29, 2009, at the hearing on defendant's motion (also before Judge Kelly), defendant presented the same arguments he presented in his written motion, with the exception that he also argued that he did not believe that the September 11, 2008, order constituted a written agreement

under the Act. Similarly, plaintiff's arguments at the hearing were substantially the same as those presented in his written response, with the exception that he argued at the hearing that the September 11, 2008, order represented a stipulation between the parties to submit to arbitration.

The trial court found that the September 11, 2008, order was a written agreement to submit the parties' dispute to arbitration and, thus, the Act applied and defendant's agreement was irrevocable. Accordingly, the trial court entered an order compelling defendant to proceed with binding arbitration.

Defendant then filed this timely appeal.

ANALYSIS

Before addressing the merits of defendant's claim on appeal, we first review plaintiff's contention that we lack jurisdiction. Pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)), a party may take an interlocutory appeal from an order compelling arbitration, because an order compelling arbitration is injunctive. Salsitz v. Kreiss, 198 Ill. 2d 1, 11 (2001). To perfect such an appeal, the appellant must file a notice of appeal within 30 days of the entry of the order compelling arbitration. 188 Ill. 2d R. 307(a). Plaintiff argues that the September 11, 2008, order compelled arbitration and, thus, defendant was obligated to appeal from that order, rather than waiting to appeal from the July 7 and July 29, 2009, orders. We find this argument to be without merit.

The September 11, 2008, order makes no mention of compelling defendant to attend arbitration. Rather, the order simply directs that the trial court proceedings be stayed pending arbitration; the trial court did not impose a requirement upon either party to attend arbitration. Nor was there any mention during the hearing on September 11, 2008, of compelling defendant to attend

arbitration. In fact, the word "compel" does not even appear in the transcript of the hearing. Further, to enter an order compelling arbitration would have been unnecessary on September 11, 2008, as the parties had indicated that they would be attending arbitration willingly. Accordingly, we do not agree with plaintiff that the September 11, 2008, order compelled arbitration.

The first order compelling defendant to attend arbitration is the order entered following the July 29, 2009, hearing. (Although the July 7, 2009, order denied defendant's motion for a protective order and directed arbitration to proceed by August 30, 2009, the issue in that motion was not whether defendant had to attend arbitration, but when he had to attend arbitration.) Defendant filed his notice of appeal on August 3, 2009, well within the 30 days provided for under Supreme Court Rule 307(a). Thus, we conclude that we have jurisdiction over this appeal.

Turning now to the merits, defendant contends that the trial court erred in finding that the Act applies to the parties' agreement to submit their dispute to arbitration and in entering an order compelling defendant to proceed with arbitration. The Act, enacted in 1961, was an adoption of the Uniform Arbitration Act, with only minor changes. J&K Cement Construction, Inc. v. Montalbano Builders, Inc., 119 Ill. App. 3d 663, 667 (1983). The Act provides in relevant part: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract ***." 710 ILCS 5/1 (West 2008). The only issue before a reviewing court in an appeal from an interlocutory order granting or denying a motion to compel arbitration is whether there was a showing sufficient to sustain the order. Onni v. Apartment Investment & Management Co., 344 Ill. App. 3d 1099, 1101 (2003); Amalgamated Transit Union, Local 900 v. Suburban Bus Division of the Regional

Transportation Authority, 262 Ill. App. 3d 334, 337 (1994).

The plain language of the Act makes apparent that the Act applies only to written agreements. See 710 ILCS 5/1 (West 2008) (referring only to "[a] written agreement to submit any existing controversy to arbitration" (emphasis added)); see also DeLuna v. Burciaga, 223 Ill. 2d 49, 59 (2006) ("when the language of the statute is clear, it must be applied as written"). Neither plaintiff nor defendant contends otherwise.

We also observe that many states that have patterned their arbitration statutes after the Uniform Arbitration Act have interpreted them as applying only to written agreements to arbitrate. See J&K Cement, 119 Ill. App. 3d at 668 (stating that because many states adopted statutes patterned after the Uniform Arbitration Act in an attempt to provide uniform arbitration laws, we may give greater-than-normal deference to the decisions of other jurisdictions interpreting their statutes based on the Uniform Arbitration Act). For example, in Anderson v. Federated Mutual Insurance Co., 481 N.W.2d 48 (Minn. 1992), the Minnesota Supreme Court considered whether an oral agreement to submit a dispute to arbitration was enforceable under its statute patterned after the Uniform Arbitration Act. The Minnesota statute provides--in language nearly identical to the Act--that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Minn. Stat. §572.08 (2008). The Minnesota Supreme Court concluded that an agreement to arbitrate must be in writing to be enforceable under the statute and, thus, an oral agreement to arbitrate was not enforceable under the statute and was subject to the common-law rules governing arbitration agreements. Anderson, 481 N.W.2d at 49-50.

Other jurisdictions have interpreted their arbitration statutes in a similar manner. See Fischer v. MBNA America Bank, N.A., 248 S.W.3d 567, 572 (Ky. App. 2007) (setting aside the arbitration award and remanding the matter to the trial court for a determination of whether there existed a written agreement between the parties to arbitrate their dispute, stating "[i]f there exists no written agreement, arbitration shall not be permitted in the dispute"); Abrams v. Four Seasons Lakesites/Chase Resorts, Inc., 925 S.W.2d 932, 938-39 (Mo. 1996) (trial court's denial of the motion to compel arbitration affirmed on the basis that there was no written agreement between the parties to arbitrate, as required by the statute); Maine State Employees Association, SEIU Local 1989 v. Bureau of Employee Relations, 652 A.2d 654, 655 (Me. 1995) ("The trial court could not compel arbitration of the present dispute for the simple reason that the Uniform Arbitration Act requires the existence of a written arbitration agreement"); Eugene W. Kelsey & Son, Inc. v. Architectural Openings, Inc., 484 So. 2d 610, 611-12 (Fla. App. 1986) (concluding that because the statute required arbitration agreements to be in writing, the oral agreement between the parties was not subject to arbitration and the arbitration award attributable to the oral agreement was reversed); In re Matter of Riverdale Fabrics Corp., 306 N.Y. 288, 289, 118 N.E.2d 104, 105 (1954) ("The rule is that a party is not to be compelled to surrender his right to resort to the courts, with all of their safeguards, unless he has agreed in writing to do so").

In the present case, it is undisputed by either party that at some point prior to September 11, 2008, they entered into an oral agreement to submit their dispute to arbitration. According to defendant, the parties never entered into a written agreement to arbitrate, and the trial court erred in concluding that the September 11, 2008, order entered by Judge Ward was a written agreement to arbitrate made irrevocable under the Act. We agree with defendant.

Although the transcript from the September 11, 2008, hearing does reflect that the parties entered into an oral agreement to arbitrate, nothing in the transcript indicates that the parties intended to enter into a written agreement to arbitrate, thereby subjecting themselves to the provisions of the Act. Likewise, the language of the September 11, 2008, order does not in any way reflect an intent on the part of the parties to enter into a written agreement to submit their dispute to arbitration. The order simply stays the trial court proceedings pending binding arbitration between the parties. As the transcript reflects, this order was based on the parties' representation that they had entered into an oral agreement to submit their dispute to arbitration.

As we will discuss, an oral agreement to arbitrate, under the common law, may be revoked by either party at any time before an arbitration award is entered. In contrast, a written agreement to arbitrate, which is subject to the Act, is irrevocable. 710 ILCS 5/1 (West 2008). Thus, parties to an arbitration agreement may choose to enter into only an oral agreement and forgo a written agreement in order to allow themselves to revoke their agreement should they so choose. Were we to hold that the September 11, 2008, order constituted a written agreement subject to the Act, parties who choose to enter into only an oral agreement could never obtain an order staying trial court proceedings pending arbitration, for fear that such an order would be viewed as a written agreement subjecting them to the Act and thereby destroying the purpose of entering into only an oral agreement for arbitration.

Having concluded that the September 11, 2008, order was not a written agreement to arbitrate made irrevocable under the Act, the question remains whether defendant was otherwise entitled to revoke his oral agreement to submit the parties' dispute to arbitration. Under the common law, an oral agreement to submit a dispute to arbitration is revocable by either party at any time prior

to the entry of an award. Cocalis v. Nazlides, 308 Ill. 152, 155 (1923); White Eagle Laundry Co. v. Slawek, 296 Ill. 240, 244 (1921); J&K Cement, 119 Ill. App. 3d at 667; Hill v. Mercury Record Corp., 26 Ill. App. 2d 350, 355 (1960). Whether defendant was entitled to revoke his oral agreement to submit to arbitration depends upon whether the Act abrogated this common-law rule. We conclude that the Act did not do so and, thus, we determine that the trial court erred in denying defendant's request to revoke his agreement to arbitrate and in compelling defendant to proceed with arbitration.

"[A] court cannot construe a statute in derogation of the common law beyond what the words of the statute expresses [sic] or beyond what is necessarily implied from what is expressed." Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 69 (2004). Any legislative intent to abrogate the common law must be clearly and plainly expressed, and we will not presume from ambiguous language an intent to abrogate the common law. Tomczak v. Planetsphere, Inc., 315 Ill. App. 3d 1033, 1038 (2000). The repeal or preemption of a common-law remedy by implication is not favored (Callahan v. Edgewater Care & Rehabilitation Center, Inc., 374 Ill. App. 3d 630, 634 (2007)), and a statute that appears to be in derogation of the common law will be strictly construed in favor of the person sought to be subjected to the statute's operation (Tomczak, 315 Ill. App. 3d at 1038).

The Act does not contain any language that reflects an intent on the part of the legislature to abrogate the common-law rule regarding revocability of oral arbitration agreements. By its own terms, the Act makes only written arbitration agreements "valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract." 710 ILCS 5/1 (West 2008). Accordingly, given the Act's silence regarding the revocability of oral arbitration agreements, we cannot construe the Act as eliminating the common-law rule allowing a party to revoke his or her oral

arbitration agreement at any time prior to the entry of an award. See Adams, 211 Ill. 2d at 71-72 ("Absent express language that disavows the common law exception based on notice, we cannot say that it was eliminated by the tariff provision"); Bush v. Squellati, 122 Ill. 2d 153, 162 (1988) ("Section 607(b) [of the Illinois Marriage and Dissolution of Marriage Act], as amended, cannot, by its silence, be construed to authorize court-ordered visitation in this case"); Tomczak, 315 Ill. App. 3d at 1038-39 ("Here, the [Roller Skating Rink Safety] Act makes no indication it is to be construed in derogation of the applicable common law. *** We will not infer a change in the law not expressed by the General Assembly").

As the enactment of the Act did not abrogate the common-law rule allowing parties to revoke their oral arbitration agreements prior to the entry of an award, the trial court erred in denying defendant's request to revoke his agreement and in compelling defendant to proceed with arbitration. Therefore, we reverse the trial court's order compelling arbitration and remand the matter to the trial court for further proceedings in accordance with this decision.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Jo Daviess County circuit court and remand for further proceedings in accordance with this decision.

Reversed and remanded.

O'MALLEY and HUDSON, JJ., concur.