**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170702-U

Order filed December 7, 2020
Modified Upon Denial of Rehearing filed July 14, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| LEO DAWKINS, Individually and as Next Friend of DOLLETT SMITH DAWKINS, a Disabled Person, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Appeal No. 3-17-0702 Circuit No. 15-L-675 |
| FITNESS INTERNATIONAL, LLC, L.A. FITNESS and L.A. FITNESS OSWEGO, | ) ) ) ) ) | Honorable Raymond E. Rossi, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices O'Brien and Daugherity concurred in the judgment.[1]

_____

**ORDER**

¶ 1    *Held*:   In a personal injury action, the circuit court erred by dismissing the plaintiff's complaint under section 2-619(a)(9) of the Code, where the plaintiff could show that the defendant violated a duty of care under applicable statutes and the common law, and where an applicable statute created an implied private right of action.

_____

[1] Justice Daugherity was added to the panel for review of the defendant's petition for rehearing.

¶ 2        Leo Dawkins, individually and also as next friend of his wife, Dollett Smith Dawkins (Dollett), filed a complaint for personal injury and spousal loss of consortium against Fitness International LLC, L.A. Fitness, and L.A. Fitness Oswego (collectively, Fitness) alleging that Dollett was rendered a disabled person as a result of willful and wanton conduct by Fitness. Specifically, Dawkins alleged that Fitness employees failed to use an automated external defibrillator (AED) on Dollett in a timely fashion after she suffered cardiac arrest while exercising in a Fitness facility, which caused Dollett to suffer permanent and irreversible brain damage.

¶ 3        Dawkins filed four successive complaints. The last three complaints alleged causes of action for both negligence and willful and wanton misconduct as a result of Fitness employees' alleged failure and refusal to use the AED as was required by statute, even though there was an employee trained to use the AED on the premises at the time of the incident.  The circuit court of Will County dismissed all counts of the complaints with prejudice. Plaintiff brings this appeal from the dismissal of his willful and wanton counts (counts I and II) of the third amended complaint.

¶ 4                                          FACTS

¶ 5        The following factual recitation is taken from the operative complaint (*i.e.*, Dawkins's third amended complaint).  Because this appeal is from the circuit court's dismissal with prejudice of the plaintiff's third amended complaint, the well-pled facts of the complaint are taken as true for purposes of the appeal.

¶ 6        On November 18, 2012, Dollett was exercising at a Fitness facility in Oswego, Illinois, when she collapsed, stopped breathing, and lost her pulse and circulation. This happened in an open and public area of the facility.  Fitness staff members were aware of Dollett's medical

emergency. Other patrons at the facility attempted unsuccessfully to administer CPR to Dollett and shouted to Fitness staff for aid and assistance. Fitness staff knew this. They also knew that the patrons were not using an AED on Dollett. There was an AED and an employee trained to use it on the premises at the time. Nevertheless, the Fitness employee who was trained to use the AED did not use it on Dollett. Nor did any other Fitness employee.

¶ 7    An AED is able to diagnose ventricular fibrillation and treat it through defibrillation by electrical therapy. While at the Fitness facility, Dollett was experiencing a ventricular fibrillation. It takes less than one minute to apply AED treatment. Uncorrected ventricular fibrillation leads to cardiac arrest, which leads to anoxic brain injury due to lack of an oxygenated blood supply.

¶ 8    The parties agree that the Fitness facility where Dollett's injuries occurred was covered by the Illinois Physical Fitness Facility Medical Emergency Preparedness Act (210 ILCS 74/1 *et seq*. (West 2012)) (PFFMEPA). Dawkins alleged that, at all relevant times, the PFFMEPA required Fitness to: (1) have a functioning AED[2] on site, (2) have staff properly trained in the assessment of patrons and the use of AEDs, (3) have properly trained staff who were required to know to assess patrons who became unconscious for breathing and signs of pulse and circulation in preparation for employing an AED device, and (4) have a medical emergency plan for responding to medical emergencies.

¶ 9    Dawkins further alleged that the PFFMEPA also required Fitness staff members to: (1) assess unconscious patrons for signs of breathing, pulse, and circulation pursuant to the training of the AED operators and Fitness's medical emergency plan; (2) assess unconscious patrons for

_____

[2] The PFFMEPA incorporates by reference the definition of an AED contained in the Illinois Automated External Defibrillator Act (AED Act) (410 ILCS 4/1 *et seq.* (West 2012)).

use of an AED; (3) attach the AED pads on an unconscious patron who had no breathing, no pulse, or no signs of circulation; and (4) follow the visual and voice prompts on the AED.

¶ 10     Dawkins alleged that, with full knowledge of Dollett's medical event and of the requirements to assess and treat her with an AED,  Fitness violated the PFFMEPA and acted "willfully, wantonly, and in utter disregard for [Dollett's] safety" by: (1) failing to have a functioning AED device on the premises in violation of its medical emergency plan and the PFFMEPA; (2) failing to have properly and adequately trained staff on the premises in violation of its medical emergency plan and the PFFMEPA; (3) refusing to assess Dollett for breathing in violation of AED operator training, the medical emergency plan, and the PFFMEPA; (4) refusing to assess Dollett for signs of pulse or circulation in violation of AED operator training, the medical emergency plan, and the PFFMEPA; (5) refusing to apply the AED to Dollett and follow the voice and visual prompts in violation of AED operator training, the medical emergency plan, and the PFFMEPA; and (6) refusing to apply the AED electrical therapy to Dollett in violation of AED operator training, the medical emergency plan, and the PFFMEPA.

¶ 11     Dawkins further alleged that Fitness's failure to apply the AED to Dollett caused her permanent brain damage.  He claimant that, had a Fitness employee connected the AED devise to Dollett in a timely fashion "as required" and followed the AED's prompts, the AED would have restored cardiac function and oxygenated blood to Dollett's brain, thereby avoiding or lessening her brain injury.

¶ 12     Dollett is a disabled adult.  She is, and continues to be, entirely without understanding or capacity to make or communicate decisions regarding her person and is totally unable to manage her estate or financial affairs.

4

¶ 13    Dawkins' third amended complaint pled two "willful and wanton counts" (counts I and II).  Count I sought damages for Dollett's brain injury, and count II sought damages for loss of consortium.  The complaint also raised two parallel counts based on ordinary negligence.

¶ 14    Fitness moved to strike or dismiss Dawkins's negligence counts because they had already been dismissed by the circuit court.  The court granted that motion.[3]  Fitness also moved to dismiss Dawkins's willful and wanton counts under section 2-619(a)(9) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)).

¶ 15    In affidavits filed in support of its motion to dismiss, Fitness acknowledged that PFFMEPA required that physical fitness facilities, such as the one operated by Fitness in Oswego, must comply with certain requirements. Specifically, PFFMEPA required that all physical fitness facilities have a medical emergency plan filed with the Illinois Department of Public Health ("IDPH"), an AED on the premises, and a trained AED on staff during business hours. However, Fitness asserted that it fulfilled each of these requirements, and was therefore immune from liability, because: (1) the IDPH has confirmed that a medical emergency plan was received and approved for the physical fitness facility operated by Fitness in Oswego; (2) Fitness had a working AED on the premises on November 18, 2012, when Dollett collapsed; and (3) the front desk employee on the premises at the time of Dollett's medical event was a trained AED user.  Fitness argued that these facts established that its Oswego facility was in full compliance with the PFFMEPA at the time of Dollett's injuries, and therefore, could not be held liable for any acts or omissions relating to her injuries.

---

[3] The circuit court had dismissed the negligence counts in Dawkins's prior complaint because: (1) Dollett had signed a Membership Agreement with Fitness's Oswego facility which explicitly released Fitness and its employees from any liability for negligence in the event that Dollett were to suffer a heart attack, stroke, or other injury while working out at the facility; and (2) the PFFMEPA barred actions based on negligence related to the use or non-use of an AED where the defendant is compliant with the PFFMEPA's requirements, as Fitness was in this case.

5

¶ 16    Fitness further maintained that the PFFMEPA created no duty to use an AED and afforded no private right of action to enforce any such duty (or any of the PFFMEPA's requirements) and that Dawkins had not pled a basis for his allegation that Fitness owed Dollett a duty to use the AED on her. Fitness also argued that neither Fitness's failure to use its AED nor any of the other alleged acts or omissions by Fitness staff rose to the level of willful and wanton conduct, and that Dawkins had failed to plead facts in support of its claim that any such actions or omissions proximately caused Dollett's injuries.

¶ 17    After briefing and oral argument, the circuit court granted Fitness's motion to dismiss Dawkins's willful and wanton counts with prejudice. The court stated:

> "All right. I think Counts I and II are to be dismissed because Defendant Fitness was in compliance. I don't believe that there is anything that creates the duty to use the AED. And I think the strongest argument is that the mere presence of an AED on the premises, even with the plan that has to be undertaken, does not impose a legal duty to provide medical assistance. So I am going to dismiss the action."

The written order subsequently issued by the circuit court stated: "After hearing Counts I and II of plaintiff's Third Amended Complaint are dismissed with prejudice. Counts III and IV previously dismissed with prejudice. Case dismissed."

¶ 18    This appeal followed.


¶ 19                          ANALYSIS

¶ 20    At issue in this appeal is whether the circuit court properly determined that, as a matter of law, Dawkins could not establish that Fitness's staff members had a duty to use its AED on

6

Dollett, and whether the circuit court properly dismissed Dawkins's third amended complaint on that basis under section 2-619(a)(9) of the Code.

¶ 21     Section 2-619(a)(9) provides that a defendant may file a motion for dismissal of the action on the grounds that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). Section 2-619(a)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact early in the litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). A motion for involuntary dismissal under section 2-619(a)(9) admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint bars or defeats the cause of action. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 931-32 (2009); *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120 (2008). When ruling on the section 2-619(a)(9) motion, the court construes the pleadings in the light most favorable to the nonmoving party (*Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55), and should grant the motion only "if the plaintiff can prove no set of facts that would support a cause of action" (*Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8). We review a circuit court's granting of a motion to dismiss under section 2-619(a)(9) *de novo*. *Kean*, 235 Ill. 2d at 361.

¶ 22     The circuit court dismissed Dawkins's willful and wanton counts because it found that Fitness was in full compliance with the PFFMEPA and that nothing created a duty for Fitness employees to use the AED on Dollett at the time of her medical emergency. By implication, the court ruled that neither the PFFPRA Act, the AED Act, nor the common law recognized or gave rise to any such duty. We disagree.

¶ 23     Section 74/45 of the PFFMEPA provides:

7

"Liability. Nothing in this Act shall be construed to either limit or expand the exemptions from civil liability in connection with the purchase or use of an [AED] that are provided under the [AED] Act or under any other provision of law. A right of action does not exist in connection with the use *or non- use* of an [AED] at a facility governed by this Act, *except for willful or wanton misconduct*, provided that the person, unit of state or local government, or school district operating the facility has adopted a medical emergency plan as required under Section 10 of this Act, has an [AED] at the facility as required under Section 15 of this Act, and has maintained the [AED] in accordance with the rules adopted by the Department." (Emphases added.)  210 ILCS 74/45 (West 2012).

¶ 24        Similarly, section 30(d) of the AED Act, which is entitled "exemption from civil liability," provides in pertinent part:

"An AED user is not liable for civil damages as a result of any act *or omission* involving the use of an [AED] in an emergency situation, *except for willful or wanton misconduct*, if the requirements of this Act are met." (Emphases added.) 410 ILCS 4/30(d) (West 2012).

¶ 25        By their plain terms, neither of these statutes immunize a defendant from liability arising from the failure to use an AED on an injured person, provided that such failure was willful and wanton.  The italicized phrases in the above quotations from each statute make clear that a defendant covered by the statutes may not be found liable for civil damages for failure to use an AED, *except for willful or wanton misconduct*.  The plain and unambiguous meaning of this phrase is that civil liability may attach to willful and wanton failures to use an AED.

8

¶ 26        Moreover, other sections of the statutes, when read together, clearly suggest that the PFFMEPA creates a duty for fitness facility staff members who are properly trained in the use of an AED to use it under appropriate circumstances. In section 5 of the AED Act, the legislature articulated its findings that "timely attention in medical emergencies saves lives, and that trained *use* of [AEDs] in medical emergency response can increase the number of lives saved." (Emphasis added.) 410 ILCS 4/5 (West 2012). The legislature also noted its intent "to encourage training in lifesaving first aid, to set standards for the use of [AEDs] and *to encourage their use*." (Emphasis added.) *Id.*

¶ 27        The PFFMEPA requires that a fitness facility like the one at issue here have a functioning AED on its premises. 210 ILCS 74/15 (West 2012). It also mandates that the facility have a staff member or members properly trained to use an AED and to assess unconscious patrons for breathing, signs of pulse, and circulation in order to determine whether to use an AED, and it mandates that a staff member with such training be present at each fitness facility during business hours. 210 ILCS 74/10 (West 2012). It also requires "each person or entity *** that operates a physical fitness facility must adopt and implement a written plan for responding to medical emergencies that occur at the facility during the time that the facility is open for use." 210 ILCS 74/10(a) (West 2012). The PFFMEPA defines "medical emergency" as "the occurrence of a sudden, serious, and unexpected sickness or injury that would lead a reasonable person, possessing an average knowledge of medicine and health, to believe that the sick or injured person requires urgent or unscheduled medical care." 210 ILCS 74/5.20 (West 2012).

¶ 28        These requirements clearly suggest that the legislature intended to impose a duty on properly trained staff to assess unconscious patients and to use the AED when appropriate.

¶ 29    Fitness argues that the AED Act and the PFFMEPA should be read as preserving liability for willful and wanton *misuse* of an AED, but not for a *failure to use* an AED, even in circumstances where the failure to use an AED would amount to willful and wanton conduct. Fitness maintains that the statutes do not create a duty to use an AED under any circumstances. Rather, they merely provide that, *if* a fitness facility employee uses an AED on someone, they must do so without committing willful and wanton misconduct. Fitness argues that AED Act's explicit reference to acts *or omissions* involving the use of an AED and the PFFMEPA's reference to "use or non-use" of an AED are meant to proscribe only the "omissions" of acts or procedures that are necessary to the proper operation of an AED when an AED is used. They were not intended to require the use of an AED in the first instance.

¶ 30    We find Fitness's argument unpersuasive. As an initial matter, Fitness's interpretation is contrary to the plain words of the relevant statutes. Section 45 of the PFFMEPA states that "[a] right of action does not exist in connection with the use *or non-use* of an [AED] at a facility governed by this Act, except for willful or wanton misconduct." (Emphasis added.) 210 ILCS 74/45 (West 2012). This sentence unambiguously provides that liability may attach for willful and wanton *failure to use* an AED, not merely for the misuse of an AED. There is nothing in the sentence suggesting that the term "non-use" is somehow meant to convey the failure to use proper techniques or judgment while using an AED. Instead, it unambiguously contemplates civil liability for the failure to use an AED, provided that such failure is willful and wanton. Fitness's tortured reading of section 45 conflicts with the statute's plain meaning. "The primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature." *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13. The

10

best indicator of the legislature's intent is the plain and ordinary language of the statute. *Id.* Accordingly, we reject Fitness's interpretation of section 45.

¶ 31     Fitness's reading of the relevant provision of the AED is also unsupportable. In pertinent part, section 30(d) of the AED Act provides that "[a]n AED user is not liable for civil damages as a result of any act *or omission* involving the use of an [AED]***." (Emphasis added.) 410 ILCS 4/30(d) (West 2012). An "omission involving the use of" an AED clearly encompasses the failure to use the AED in appropriate circumstances. Nether section restricts liability for willful and wanton misconduct to the improper use (as opposed to non-use) of an AED. We may not read such a restriction or limitation into the statutes when such a reading contradicts the legislature's clearly expressed intent in the unambiguous statutory language. *Goesel*, 2017 IL 122046, ¶ 13.

¶ 32     Moreover, Fitness's reading would negate the expressed purpose of the statutes, which is to protect patrons of fitness facilities and to save lives by encouraging the proper use of AEDs, and it would render the statutes absurd and ineffectual. On Fitness's reading, a fitness facility could fully comply with the PFFMEPA by having a functioning AED on site, training a staff member in its use, and developing an emergency medical plan, without having any obligation to implement the plan or to have the trained employee use the AED on a stricken patron under any circumstances. This interpretation flouts the plain language of the statutes, their expressed purposes, and common sense. As Dawkins's counsel aptly stated before the circuit court, Fitness's reading would allow covered facilities to be in full compliance with the statutes even if they used the AED only "as wall art." We must avoid construing a statute in a manner than would render it absurd, pointless, or ineffectual. *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455 (1990) ("Statutes are to be construed in a manner that avoids absurd *** results");

11

*People v. Hunter*, 2017 IL 121306, ¶ 28 (courts should avoid construing a statute in a manner that "would lead to real-world results that the legislature could not have intended"); *Schoenbachler v. Minyard*, 110 S.W.3d 776, 783 (Ky. 2003) ("it is axiomatic that, when interpreting a provision of a statute, a court should not, if possible, adopt a construction that renders a provision meaningless or ineffectual or interpret a provision in a manner that brings about an absurd or unreasonable result").

¶ 33    However, even assuming *arguendo* the statutes at issue did not create a duty to use an AED in this case, such a duty is recognized under the common law. To state a claim for negligence, a plaintiff must plead a duty owed by a defendant to that plaintiff, a breach of that duty, and injury proximately caused by that breach of duty. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). Whether a duty of care exists is a question of law to be decided by the court. *Buerkett v. Illinois Power Co.*, 384 Ill. App. 3d 418, 422 (2008). In deciding whether a defendant owes a plaintiff a duty, the court considers (1) whether the plaintiff's injury was reasonably foreseeable, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against injury, and (4) the consequences of placing a burden on the defendant. *Buerkett v. Illinois Power Co.*, 384 Ill. App. 3d 418, 422 (2008).

¶ 34    Consideration of these factors supports the conclusion that Fitness had a common law duty to use an AED on Dollett under the facts presented in this case. It is certainly foreseeable that patrons could suffer cardiac events while exerting themselves at fitness centers. Indeed, the purpose of the PFFMEPA is to provide AEDs to fitness facilities and to staff those facilities with trained AED operators in order to provide life-saving treatment for such medical emergencies. Cardiac events are more likely to occur at fitness facilities than at other commercial establishments due to the fact that all of the patrons at fitness facilities are exerting themselves.

12

That is why the PFFMEPA's requirements are directed to fitness facilities. Moreover, the legislature has already determined that the burden of guarding against the injury should be assigned to fitness centers by requiring fitness centers to have functioning AEDs and trained AED users on staff during business hours. Further, the consequences of placing that burden on fitness centers are reasonable. A patron suffering cardiac arrest is in grave danger and helpless to care for herself. A trained AED user at a fitness facility is in a far better position to care for such patrons than are the patrons themselves or other patrons. In the PFFMEPA, the legislature has already decided that a fitness facility must take reasonable precautions to help prevent fatal injuries from cardiac arrest, strokes, or other emergency medical conditions. Moreover, the legislature has eliminated common law liability for negligent use or non-use of an AED by a fitness facility employee, thereby lessening the consequences of placing the burden on entities like Fitness.

¶ 35    Moreover, a common law duty arises from section 314A of the Restatement (Second) of Torts, which has been adopted by our supreme court. See *Marshall*, 222 Ill. 2d at 438. That section provides that the relationship between a business invitor and invitee is a special relationship that may give rise to an affirmative duty on the business invitor's part to aid or protect his invitee against unreasonable risk of physical harm. *Id.* This includes the duty to: (1) give the invitee such first aid as he reasonably can once he knows or has reason to know that the invitee is endangered, ill, or injured; and (2) care for the invitee until he can be cared for by others (*i.e.*, to take reasonable steps to turn the sick invitee over to a physician). Restatement (Second) of Torts § 343A cmt. f (1965). Accordingly, irrespective of any duty it may or may not have owed under the PFFMEPA or AED Act, Fitness owed a duty under Illinois common law to provide "reasonable" first aid to Dollett given that it knew of her condition. Because Fitness had

13

a functioning AED on site and a staff member trained in its proper use, "reasonable" first aid might have included use of the AED on Dollett. In any event, at this early stage of the litigation, it cannot be said that Dawkins can present "no set of facts" establishing that Fitness owed Dollett a common law duty to use the AED on her in a timely manner.

¶ 36        Fitness relies upon *Salte v. YMCA of Metropolitan Chicago Foundation*, 351 Ill. App. 3d 524 (2004), to establish that no such duty exists. However, *Salte* is distinguishable. In *Salte*, our appellate court held that a health club was not required to have an AED on site and to use it on a patron who suffered cardiac arrest while using treadmill at the health club. *Id.* at 529. However, in *Salte*, the health club did not have an AED on the premises, much less an employee properly trained in the use of an AED and in the evaluation of unconscious patrons for such use, as here. *Id.* at 525 (the events in *Salte* took place before the PFFMEPA was enacted). Accordingly, *Salte* is of little relevance in determining the scope of Fitness's common law duty in this case.

¶ 37        Fitness argues in the alternative that the PFFMEPA and AED Act abrogate any common law duty by immunizing the defendants from liability for failing to use an AED on a patient suffering from a cardiac emergency. We disagree. As noted above, the statutes clearly and unambiguously immunize only negligent conduct in connection with the use or non-use of an AED, not willful and wanton conduct. Moreover, "[t]he repeal or preemption of a common-law remedy by implication is not favored [citation], and a statute that appears to be in derogation of the common law will be strictly construed in favor of the person sought to be subjected to the statute's operation [citation]." *Heider v. Knautz*, 396 Ill. App. 3d 553, 561 (2009). "Any legislative intent to abrogate the common law must be clearly and plainly expressed, and [courts] will not presume from ambiguous language an intent to abrogate the common law." *Id.* Here, there is no such ambiguous language in the statutes at issue, and no clearly and plainly expressed

14

legislative intent to abrogate common law actions or remedies. To the contrary, both statutes expressly state that they are not immunizing entities subject to the statutes from liability for willful and wanton misconduct.

¶ 38     Furthermore, even if there were no applicable common-law cause of action, we agree with Dawkins that a private right of action can be implied from the PFFMEPA. A court may determine that a private right of action is implied in a statute that lacks explicit language regarding whether a private right of action shall be allowed. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999); *Pilotto v. Urban Outfitters West, L.L.C.*, 2017 IL App (1st) 16084, ¶ 22. In order to find an implied private right of action, a court must find that: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Fisher*, 188 Ill. 2d at 460; *Pilotto,* 2017 IL App (1st) 16084, ¶ 22.

¶ 39     Here, Dollett was a patron at a fitness facility, which is exactly the class of persons that the PFFMEPA was enacted to benefit. Dollett's injury (cardiac arrest caused by a ventricular fibrillation) is precisely the type of injury that an AED detects and treats, and her brain injury as the result of untreated ventricular fibrillation is exactly the type of injury that the PFFMEPA was designed to prevent. The language and the requirements of the PFFMEPA make clear that a private right of action is consistent with the underlying purpose of the statute, which is to protect patrons of fitness facilities from suffering serious injuries by having trained AED users on site who will use an AED on patients suffering cardiac events.

¶ 40    Moreover, implying a private right of action is necessary to provide an adequate remedy for violations of the statute.  The only remedy for violations of the PFFMEPA expressly provided in the statute are: (1) a written administrative warning from the Director of Public Health (Director) without monetary penalty for the initial violation; (2) a civil monetary penalty of at least $1,500 but less than $2,000 imposed against the facility by the Director for a second violation; and (3) a civil monetary penalty of least $2,000 for a third or subsequent violation.  Under this penalty scheme, there is virtually no incentive for a fitness facility not to commit one violation since a single violation will not incur a penalty.  However, one failure to use an AED on a patron suffering cardiac arrest can result in permanent and irreversible injury or death.  That is exactly what the PFFMEPA was enacted to prevent.  Moreover, the PFFMEPA does not expressly provide for criminal penalties or overly burdensome fines to redress violations of the statute.  Thus, contrary to Fitness's argument, the penalty scheme included in the PFFMEPA is not the type of  "robust built-in enforcement mechanism" that makes compliance with the statute likely and that provides an adequate remedy for violations of the statute.  See *Carmichael v. Union Pacific Railroad Co.*, 2018 IL App (1st) 170075, ¶ 22, *vacated on other grounds*, 2019 IL 123853 (collecting cases). We find this case to be analogous to *Pilotto*, 2017 IL App (1st) 16084, ¶ 32, wherein our appellate court found an implied private right of action and held that the statute's imposition of a $100 fine for violations of the statute without requiring any investigations or further sanctions did not provide an adequate remedy.[4]

_____

[4] Moreover, our supreme court has held that the presence of administrative enforcement mechanisms like those authorized by the PFFMEPA does not preclude an implied right of action for civil damages. *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 391 (1982) (holding that the fact that the legislature provided for departmental enforcement of regulations promulgated under the Brokers Licensing Act by the Department of Registration and Education, which included the authority to suspend or revoke a certificate of registration or censure a registrant when the Department found that a registered broker had violated the Act, did "not necessarily mean that the [legislature] must not have intended to create a private right of action").  Moreover, none of the administrative remedies prescribed by the

16

¶ 41       Fitness further argues that Dawkins failed to adequately allege willful and wanton misconduct.

> " 'A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting reckless disregard for the safety of others, such as a failure, after knowledge of an impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.' " *Ziarko v. Soo Line Railroad Co.*, 161 Ill. 2d 267, 273 (1994) (quoting *Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569 (1946)).

There is a continuum of conduct within the spectrum of conduct which is "willful and wanton." *Id.* at 275. At the lower end of the spectrum, "willful and wanton acts share many similar characteristics with acts of ordinary negligence," where willful and wanton misconduct "may be only degrees more than ordinary negligence." *Id.* At the other end of the spectrum, "willful and wanton acts may be only degrees less than intentional wrongdoing." *Id.* at 276.

¶ 42       In this case, Dawkins alleged that Fitness was required by its medical emergency plan and by the training provided to its staff to assess unconscious patrons for the use of an AED, and to attach the AED pads to a patron and follow the voice prompts where the patron was unconscious and had no signs of breathing, circulation, or a pulse. Dawkins further alleged that Fitness failed to do this despite the fact that Fitness knew that Dollett had collapsed, stopped breathing, and lost her pulse in an open and public area of the facility, and despite the fact that

---

PFFMEPA would compensate fitness facility patrons harmed by a defendant's violations of the statute, even though the protection of such patrons is the primary purpose of the PFFMEPA. In addition, the PFFMEPA arguably acknowledges a private right of action by stating that "[a] right of action does not exist in connection with the use or non- use of an [AED] at a facility governed by this Act, *except for willful or wanton misconduct.*" (Emphasis added.) 210 ILCS 74/45 (West 2012). For all these reasons, finding an implied right of action for civil damages in the PFFMEPA seems particularly appropriate.

Fitness knew that other patrons were calling to Fitness staff for help. Dawkins alleged that Fitness failed to follow its medical emergency plan and failed to use the AED on Dollett, which proximately caused her to suffer permanent and irreversible brain damage. Assuming the truth of these allegations, as we must, we cannot say that they are insufficient to plead a claim for willful and wanton conduct as a matter of law.

¶ 43    Finally, Fitness argues that it would be bad policy to require non-medical personnel to use AEDs. We are not persuaded by this argument. The legislature chose to eliminate liability for ordinary negligence but not for willful and wanton conduct. The language and purposes of the Act demonstrate that the legislature has imposed a limited duty to use an AED by allowing liability only for a failure to use that would amount to willful and wanton misconduct. The legislature has therefore concluded that such limited liability adequately protects fitness clubs and their staff while allowing injured plaintiffs a limited cause of action against them. We will not second guess the legislature's policy determinations on this issue.

¶ 44    As noted above, the question presented on review of the circuit court's granting of Fitness's section 2-619(a)(9) motion to dismiss is whether Dawkins could prove any set of facts that could entitle him to relief. Specifically, the question is whether Dawkins could possibly produce evidence establishing that, under the particular facts and circumstances presented in this case, Fitness' employees' failure to render AED treatment to Dollett after she collapsed amounted to willful and wanton conduct that breached a duty that Fitness owed to Dollett and proximately caused her injuries. At this early stage of the litigation, such a possibility cannot be ruled out as a matter of law. Taking the allegations in Dawkins's complaint as true, the complaint may not be dismissed as a matter of law. Accordingly, the circuit court's dismissal of Dawkins's third amended complaint was improper.

18

¶ 45       We have considered the remaining arguments made by Fitness and have found them to be meritless.

¶ 46                                                CONCLUSION

¶ 47       For the reasons set forth above, we reverse judgment of the circuit court of Will County and remand for further proceedings.

¶ 48       Reversed. Cause remanded.