**2022 IL 127561**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127561)

LEO DAWKINS, Appellee, v. FITNESS INTERNATIONAL, LLC,
*et al.*, Appellants.

*Opinion filed May 19, 2022.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, and Overstreet concurred in the judgment and opinion.

Justice Carter took no part in the decision.

**OPINION**

¶ 1    The main question presented in this case is whether a physical fitness facility has a duty under either the Physical Fitness Facility Medical Emergency Preparedness Act (Facility Preparedness Act) (210 ILCS 74/1 *et seq.* (2012)) or the

Automated External Defibrillator Act (AED Act) (410 ILCS 4/1 *et seq.* (2012)) to use an automated external defibrillator (AED) when a patron is having an apparent cardiac event and *non-use* of the AED would amount to willful and wanton misconduct. For the reasons set forth below, we answer this question in the affirmative and hold that the statutory scheme does impose such a duty.

¶ 2                                BACKGROUND

¶ 3        Plaintiff Leo Dawkins, individually and as next friend of his wife, Dollett Smith Dawkins (Dollett), filed a lawsuit to recover for personal injury and spousal loss of consortium against Fitness International LLC, L.A. Fitness, and L.A. Fitness Oswego (collectively, Fitness). Plaintiff alleged that Dollett was rendered a disabled person with permanent and irreparable brain damage as a proximate result of Fitness's willful and wanton misconduct in failing to use an AED on Dollett in a timely fashion after she suffered cardiac arrest while exercising at one of their facilities.

¶ 4        Plaintiff filed four successive complaints. The last three complaints alleged causes of action for both negligence and willful and wanton misconduct based on Fitness employees' failure and refusal to use the AED as required by statute, even though there was an employee trained to use the AED on the premises at the time of the incident. The circuit court of Will County dismissed all the counts of the various complaints with prejudice. Plaintiff brings this appeal from the dismissal of the willful and wanton counts (counts I and II) of his third amended complaint.

¶ 5        According to the facts alleged in plaintiff's third amended complaint, Dollett was exercising at a Fitness facility in Oswego, Illinois, on November 18, 2012, when she collapsed, stopped breathing, and lost her pulse and circulation. This happened in an open, public area of the facility. Fitness staff members were aware of Dollett's medical emergency. Other patrons at the facility attempted to administer CPR to Dollett unsuccessfully and shouted to Fitness staff for aid and assistance. Fitness staff knew this. They also knew that the patrons were not using an AED on Dollett. There was an AED and an employee trained to use it on the premises at the time. Nevertheless, the Fitness employee who was trained to use the AED did not use it on Dollett. Nor did any other Fitness employee.

¶ 6        An AED can diagnose ventricular fibrillation and treat it through defibrillation by electrical therapy. While at the Fitness facility, Dollett was experiencing a ventricular fibrillation. It takes less than one minute to apply AED treatment. Uncorrected, the condition leads to cardiac arrest, which in turn can lead to anoxic brain injury due to the lack of an oxygenated blood supply.

¶ 7        The Fitness facility where Dollett's injuries occurred was covered by the Facility Preparedness Act (210 ILCS 74/1 *et seq.* (West 2012)).[1] Plaintiff alleged that, at all relevant times, the Facility Preparedness Act required Fitness to (1) have a functioning AED on site, (2) have staff properly trained in the assessment of patrons and the use of AEDs, (3) have properly trained staff who were required to know how to assess patrons who became unconscious for breathing and signs of pulse and circulation in preparation for employing an AED device, and (4) have a medical emergency plan for responding to medical emergencies.

¶ 8        Plaintiff further alleged that the Facility Preparedness Act also required Fitness staff members to (1) assess unconscious patrons for signs of breathing, pulse, and circulation pursuant to the training of the AED operators and Fitness's medical emergency plan; (2) assess unconscious patrons for use of an AED; (3) attach the AED pads on an unconscious patron who had no breathing, no pulse, or no signs of circulation; and (4) follow the visual and voice prompts on the AED.

¶ 9        Plaintiff alleged that, with full knowledge of Dollett's medical event and of the requirements to assess and treat her with an AED, Fitness violated the Facility Preparedness Act and acted willfully, wantonly, and in utter disregard for Dollett's safety by (1) failing to have a functioning AED device on the premises in violation of its medical emergency plan, (2) failing to have properly and adequately trained staff on the premises in violation of its medical emergency plan, (3) refusing to assess Dollett for breathing in violation of AED operator training and the medical emergency plan, (4) refusing to assess Dollett for signs of pulse or circulation in violation of AED operator training and the medical emergency plan, (5) refusing to apply the AED to Dollett and follow the voice and visual prompts in violation of AED operator training and the medical emergency plan, and (6) refusing to apply

---

[1]There is no dispute in this case that Fitness is a "physical fitness facility" as defined by the Facility Preparedness Act and is therefore subject to the requirements of that Act. See 210 ILCS 74/5.25 (West 2012).

the AED electrical therapy to Dollett in violation of AED operator training and the medical emergency plan.

¶ 10    Plaintiff further alleged that Fitness's failure to apply the AED to Dollett caused her permanent brain damage. He asserted that, had a Fitness employee connected the AED device to Dollett in a timely fashion "as required" and followed the AED's prompts, the AED would have restored cardiac function and oxygenated blood to Dollett's brain, thereby avoiding or lessening her brain injury.

¶ 11    As noted, the third amended complaint pled two "willful and wanton" counts (counts I and II). Count I sought damages for Dollett's brain injury, and count II sought damages for loss of consortium. The complaint also raised two parallel counts based on an ordinary negligence theory (counts III and IV).

¶ 12    Fitness moved to strike or dismiss plaintiff's negligence counts, noting that they had been dismissed by a different judge earlier in the litigation. The court granted that motion because the previous circuit court judge assigned to hear the matter had dismissed those counts on two separate grounds: (1) Dollett had signed a membership agreement with Fitness's Oswego facility that explicitly released Fitness and its employees from any liability for negligence in the event that Dollett were to suffer a heart attack, stroke, or other injury while working out at the facility and (2) the Facility Preparedness Act barred actions based on negligence that are related to the use or non-use of an AED where the defendant is compliant with the Facility Preparedness Act's requirements, such as having an AED and an employee trained to use it on site.

¶ 13    Fitness also moved to dismiss plaintiff's willful and wanton counts of the third amended complaint, specifically bringing its motion under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)). In affidavits filed in support of its motion to dismiss, Fitness acknowledged that the Facility Preparedness Act required that physical fitness facilities, such as the one operated by Fitness in Oswego, must comply with certain requirements. Specifically, the Facility Preparedness Act required that all physical fitness facilities have a medical emergency plan filed with the Illinois Department of Public Health (IDPH), an AED on the premises, and a trained AED operator on staff during business hours. Fitness asserted, however, that it fulfilled each of these requirements and was therefore immune from liability, because (1) the IDPH

confirmed that a medical emergency plan was received and approved for the physical fitness facility operated by Fitness in Oswego prior to November 18, 2012, (2) Fitness had a working AED on the premises on November 18, 2012, when Dollett collapsed, and (3) the front desk employee on the premises at the time of Dollett's medical event was a trained AED user. Fitness argued that these facts established that its Oswego facility was in full compliance with the Facility Preparedness Act at the time of Dollett's injuries and, therefore, could not be held liable for any acts or omissions relating to her injuries.

¶ 14     Fitness further maintained that the Facility Preparedness Act created no duty to use an AED and afforded no private right of action to enforce any such duty (or any of the Facility Preparedness Act's requirements) and that plaintiff had not pled a basis for his allegation that Fitness owed Dollett a duty to use the AED on her. Fitness also argued that neither Fitness's failure to use its AED nor any of the other alleged acts or omissions by Fitness staff rose to the level of willful and wanton misconduct and that plaintiff had failed to plead facts in support of his claim that any such actions or omissions proximately caused Dollett's injuries.[2]

¶ 15     After briefing and oral argument, the circuit court granted Fitness's motion to dismiss plaintiff's willful and wanton counts with prejudice, stating:

"All right. I think Counts I and II are to be dismissed because Defendant Fitness was in compliance. I don't believe that there is anything that creates the duty to use the AED. And I think the strongest argument is that the mere presence of an AED on the premises, even with the plan that has to be undertaken, does not impose a legal duty to provide medical assistance. So, I am going to dismiss the action."

The court's written order then dismissed counts I and II of plaintiff's third amended complaint (the willful and wanton counts) with prejudice and noted that counts III and IV (the negligence counts) had previously been dismissed with prejudice.

---

[2]We note that this argument made by Fitness that the complaint was factually insufficient does not seem appropriate for a section 2-619(a)(9) motion to dismiss. Rather, such an argument would be something normally raised in a motion brought under section 2-615 of the Code. Compare 735 ILCS 5/2-619(a)(9) (West 2012), with *id.* § 2-615.

¶ 16      On appeal, the appellate court reversed the circuit's dismissal of counts I and II. In doing so, it first found that the Facility Preparedness Act when read in conjunction with the AED Act gave rise to a duty. See 2020 IL App (3d) 170702-U, ¶ 26. It noted that section 45 of the Facility Preparedness Act provides that a " 'right of action does not exist in connection with the use *or non-use* of an [AED] at a facility governed by this Act, *except for willful or wanton misconduct*.' " (Emphases in original.) *Id.* ¶ 23 (quoting 210 ILCS 74/45 (West 2012)); see also *id.* ¶ 30. Similarly, it noted that section 30(d) of the AED Act provides in relevant part that an " 'AED user is not liable for civil damages as a result of any act *or omission* involving the use of an [AED] in an emergency situation, *except for willful or wanton misconduct*, if the requirements of this Act are met.' " (Emphases in original.) *Id.* ¶ 24 (quoting 410 ILCS 4/30(d) (West 2012)). The plain and obvious meaning of these statutes, the appellate court found, is that civil liability may attach to willful and wanton failures to use an AED. *Id.* ¶ 25.

¶ 17      Fitness argued before the appellate court that the AED Act and the Facility Preparedness Act should be read as preserving liability only for willful and wanton *misuse* of an AED, but not for a *failure to use* an AED, even in circumstances where the failure to use an AED would amount to willful and wanton conduct. Fitness further argued that the AED Act's explicit reference to acts *or omissions* involving the use of an AED and the Facility Preparedness Act's reference to "use or non-use" of an AED were meant to proscribe only the "omissions" of acts or procedures that are necessary to the proper operation of an AED when an AED is used. They were not intended to require the use of an AED in the first place.

¶ 18      The appellate court found Fitness's interpretation to be contrary to the plain language of both statutes at issue. It noted that the above-quoted second sentence of section 45 of the Facility Preparedness Act, referring to *non-use* of an AED (see 210 ILCS 74/45 (West 2012)), unambiguously provides that liability may attach for willful and wanton *failure to use* an AED, not merely for the misuse of an AED. 2020 IL App (3d) 170702-U, ¶ 30. There is nothing in the sentence suggesting that the term "non-use" is somehow meant to convey the failure to use proper techniques or judgment while using an AED, the appellate court noted. *Id.* Instead, it found that the sentence in question unambiguously contemplates civil liability for the failure to use an AED, provided that such failure is willful and wanton. *Id.*

¶ 19 The appellate court also found Fitness's reading of section 30(d) of the AED Act unsupportable, noting that an " 'omission involving the use of' " an AED clearly encompasses the failure to use the AED in appropriate circumstances. *Id.* ¶ 31.

¶ 20 The appellate court concluded that neither statutory section at issue restricts liability for willful and wanton misconduct to the improper use (as opposed to non-use) of an AED. And the court determined that Fitness's reading would negate the expressed purpose of the statutes—to protect patrons of fitness facilities and to save their lives by encouraging the proper use of an AED—and would render the statutes absurd and ineffectual. *Id.* ¶¶ 31-32. On Fitness's reading, a fitness facility could fully comply with the Facility Preparedness Act by having a functioning AED on site, training a staff member in its use, and developing an emergency medical plan, without having any obligation to implement the plan or to have the trained employee actually use the AED on a stricken patron under any circumstances. *Id.* ¶ 32.

¶ 21 The appellate court also found that a private right of action could be implied from the Facility Preparedness Act. *Id.* ¶ 38. The appellate court, in addition, conducted a traditional, common-law-duty analysis and determined that, assuming *arguendo* that the statutes do not create a duty, one should nevertheless be recognized under the common law that essentially tracks the duty that it had already found to exist under the statute. *Id.* ¶¶ 33-37. Finally, the appellate court reviewed the allegations of the complaint (which at this point must be taken as true) and determined that, at this early stage, it could not be ruled out that a trier of fact could properly determine that Fitness's employees' failure to render treatment amounted to willful and wanton conduct that breached the duty owed to Dollett, thereby proximately causing her injuries. *Id.* ¶ 44.

¶ 22 We allowed Fitness's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021). We also allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 24        This case comes before us by way of the appellate court's reversal of the circuit court's dismissal of plaintiff's third amended complaint pursuant to section 2-619(a)(9) of the Code. That statutory subsection permits the involuntary dismissal of an action on the grounds that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). Thus, a motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings that defeat the claim, such as an immunity from tort liability conferred by statute. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. When deciding a motion based on section 2-619, a court is to accept all well-pled facts in the complaint as true and will grant the motion only when it appears that no set of facts could be proved that would allow the plaintiff to recover. *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 11. The court should construe the pleadings and supporting documents in the light most favorable to the nonmoving party. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). Moreover, all inferences that may reasonably be drawn in the plaintiff's favor from the well-pled facts must be accepted as true. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Our review of the matter is conducted *de novo*. *Sandholm*, 2012 IL 111443, ¶ 55.

¶ 25        Fitness first argues before this court that the appellate court erred in finding a statutory duty to refrain from the willful and wanton non-use of an AED based on either the Facility Preparedness Act or the AED Act. Fitness maintains that the appellate court, therefore, should not have reversed the section 2-619(a)(9) dismissal of plaintiff's willful and wanton counts.

¶ 26        Whether a statutory duty was created that avoids dismissal of the willful and wanton counts in this case presents an issue of statutory construction. When presented with an issue of statutory construction, we employ the familiar and well-settled rules from our prior precedent, which are as follows.

¶ 27        Our primary and overriding concern is to ascertain and give effect to the intent of the legislature. *People v. Whitney*, 188 Ill. 2d 91, 97 (1999). Legislative intent is best determined from the language of the statute itself, which if unambiguous should be enforced as written. *Taddeo v. Board of Trustees of the Illinois Municipal*

*Retirement Fund*, 216 Ill. 2d 590, 595 (2005); *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 473 (2005). In giving effect to the statutory intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought. *People v. Donoho*, 204 Ill. 2d 159, 171-72 (2003). It is also true that statutes must be construed to avoid absurd results. *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27. When a proffered reading of a statute leads to absurd results or results that the legislature could not have intended, courts are not bound to that construction, and the reading leading to absurdity should be rejected. *Id.* It is also well settled that issues necessitating statutory interpretation are questions of law subject to *de novo* review. *Id.* (citing *People v. Manning*, 2018 IL 122081, ¶ 16).

¶ 28    We begin our analysis with an examination of the language of the two statutes in question that touch upon the use of AEDs. Section 5 of the AED Act sets forth the clear legislative intent in enacting the AED statute by providing as follows:

"The General Assembly finds that timely attention in medical emergencies saves lives, and that trained use of [AEDs] in medical emergency response can increase the number of lives saved. It is the intent of the General Assembly to encourage training in lifesaving first aid, to set standards for the use of [AEDs] and to encourage their use." 410 ILCS 4/5 (West 2012).

¶ 29    Some of the beneficial characteristics of an AED are set forth in the definitions section of the AED Act and include that it "is capable of determining, without intervention by an operator, whether defibrillation should be performed." *Id.* § 10(2). Further, the Act states that an AED is capable of automatic delivery of electrical impulse and is to be "set to operate in the automatic mode." *Id.* § 10(2)-(4).

¶ 30    A "trained AED user" is defined as follows:

"[A] person who has successfully completed a course of instruction in accordance with the standards of a nationally recognized organization such as the American Red Cross or the American Heart Association or a course of instruction in accordance with the rules adopted under this Act to use an [AED] ***." *Id.* § 10.

¶ 31    The Facility Preparedness Act in turn mandates that a fitness facility, like the one at issue here, have a functioning AED on its premises. 210 ILCS 74/15 (West 2012). It also requires that the facility have a staff member or members properly trained to use an AED and to assess unconscious patrons for breathing, signs of pulse, and circulation to determine whether to use an AED, and it mandates that a staff member with such training be present at each fitness facility during business hours. *Id.* § 15(b). It also requires "each person or entity *** that operates a physical fitness facility must adopt and implement a written plan *for responding to* medical emergencies that occur at the facility during the time that the facility is open for use." (Emphasis added.) *Id.* § 10(a). The Facility Preparedness Act defines "medical emergency" as "the occurrence of a sudden, serious, and unexpected sickness or injury that would lead a reasonable person, possessing an average knowledge of medicine and health, to believe that the sick or injured person requires urgent or unscheduled medical care." *Id.* § 5.20.

¶ 32    We look now to the key provisions of the statutory scheme that bear directly upon liability and from which the appellate court found that a duty existed. Section 45 of the Facility Preparedness Act provides as follows:

    "Liability. Nothing in this Act shall be construed to either limit or expand the exemptions from civil liability in connection with the purchase or use of an [AED] that are provided under the [AED] Act or under any other provision of law. A right of action does not exist in connection with the use *or non-use* of an [AED] at a facility governed by this Act, *except for willful or wanton misconduct*, provided that the person, unit of state or local government, or school district operating the facility has adopted a medical emergency plan as required under Section 10 of this Act, has an [AED] at the facility as required under Section 15 of this Act, and has maintained the [AED] in accordance with the rules adopted by the Department." (Emphases added.) *Id.* § 45.

Similarly, section 30(d) of the AED Act, which is titled "exemption from civil liability," provides in pertinent part:

    "An AED user is not liable for civil damages as a result of any act *or omission* involving the use of an [AED] in an emergency situation, *except for willful or wanton misconduct*, if the requirements of this Act are met." (Emphases added.) 410 ILCS 4/30(d) (West 2012).

¶ 33    We agree with the appellate court that, by their plain terms, neither of these statutes immunizes a defendant from liability arising from the failure to use an AED on an injured person, provided that such failure was willful and wanton. If the statutes do not immunize Fitness from liability for willful and wanton misconduct, then, there is no real "affirmative matter" that it can be relying upon that would support a motion to dismiss under section 2-619(a)(9). See 735 ILCS 5/2-619(a)(9) (West 2012). Of great importance is the fact that the italicized phrases in the above quotations from each statute make clear that a defendant covered by the statutes may not be found liable for civil damages for failure to use or not use an AED, *except for willful or wanton misconduct*. The plain and unambiguous meaning of this phrase is that civil liability may attach to willful and wanton failures to use an AED. In other words, a right of action does exist for willful and wanton misconduct in connection with the non-use of an AED.

¶ 34    The Facility Preparedness Act cannot be read in any other manner. The fact that an exception for *willful and wanton non-use* of an AED was made in the second sentence of section 45 of the Facility Preparedness Act, while also indicating that a right of action does not exist for negligence, necessarily means that the "excepted" action does in fact exist. The Facility Preparedness Act mandates that an AED, and personnel trained to use it, be on the premises of the physical fitness facility. The statutory duty, then, was to not willfully or wantonly use, or fail to use, that mandatory equipment. If refusing to use an AED was completely immunized in all situations, any person who used an AED could be potentially liable under the narrow willful and wanton circumstances decreed by statute, but any person who refused to use the AED, and did so in a willful and wanton manner, would be immunized. Thus, any facility desiring maximum protection of its interests would instruct its staff to never use an AED. Clearly, the construction offered by Fitness would lead to an absurd result and would be just the opposite of the legislative intent in our view.

¶ 35    Fitness argues that the legislature intended to merely encourage the use of AEDs but not to mandate their use. We agree that the legislature did not intend to mandate the use of an AED in all medical emergencies. Rather, the duty imposed by the statute is to assess the patron that is having an apparent cardiac emergency and determine whether use of the AED would be appropriate and ultimately to refrain from willful and wanton non-use. But we fail to see how Fitness's

construction of the statute—that there is no duty or liability under the statute for even willful and wanton failures to use the AED—would encourage their use.

¶ 36 Fitness essentially argues that an employee trained to use an AED cannot be expected to use it in an emergency. This would seem to be an argument better directed to the trier of fact as to whether Fitness's conduct was in fact willful and wanton. We do note, however, that the statute does require that Fitness always have a trained AED operator on duty when it is open to the public. Moreover, there is no indication from the pleadings other than that AEDs are relatively simple to operate, that it "takes less than one minute to apply AED treatment to a person," and that the machine itself prompts and advises.

¶ 37 We also agree with the appellate court that other aspects of the statutory scheme clearly suggest that the Facility Preparedness Act creates a duty for fitness facility staff members who are properly trained in the use of an AED to refrain from the willful and wanton non-use of an AED under circumstances when use would be appropriate. Again, and as was noted by the appellate court, the legislature in section 5 of the AED Act articulated its findings that "timely attention in medical emergencies saves lives, and that trained *use* of [AEDs] in medical emergency response can increase the number of lives saved." (Emphasis added.) 410 ILCS 4/5 (West 2012). The legislature also noted its intent "to set standards for the use of [AEDs] and *to encourage their use*." (Emphasis added.) *Id.* Crucially, the AED Act requires that a fitness facility "must adopt and implement a written plan *for responding* to medical emergencies that occur at the facility during the time that the facility is open for use." (Emphasis added.) 210 ILCS 74/10(a) (West 2012). We find that it would make little sense to require a "plan for responding" to a medical emergency if the facility could simply refuse to respond, and do so in a willful and wanton manner, when the emergency it planned for indeed arises.

¶ 38 Fitness cites three cases from other states to support its position—*Trim v. YMCA of Central Maryland, Inc.*, 165 A.3d 534 (Md. Ct. Spec. App. 2017), *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886 (Tenn. 2016), and *Miglino v. Bally Total Fitness*, 985 N.E.2d 128 (N.Y. 2013). We do not find these decisions to be persuasive.

¶ 39 *Trim* and *Wallis* are distinguishable because, unlike our Illinois statute, the respective Maryland and Tennessee statutes did not absolutely require that a

physical fitness facility have an AED on site. In *Miglino*, the New York statute at issue did require the fitness facility to have an AED on site and a person trained to use it on the premises. *Miglino*, 985 N.E.2d at 131. The intermediate appellate court held that the statute imposed a duty to use the AED. *Id.* at 132. On review of that decision, however, the state's highest court disagreed and found no duty. But the chief justice of that court wrote a dissent, asserting that "the presence of an AED will be of no benefit whatsoever to a person in cardiac arrest unless, of course, it is actually used." *Id.* at 135 (Lippman, C.J., dissenting). The dissenting chief justice therefore concluded that the statute should be interpreted as imposing a duty to use the AED. *Id.* For the reasons noted above in our analysis, we find the dissent in *Miglino* more persuasive than the majority opinion.

¶ 40        Fitness's reading of the statute would vitiate, or at least frustrate, the expressed purpose of the statutory scheme—which is to protect patrons of fitness facilities and save lives by encouraging the proper use of AEDs—and it would render the statutes absurd and ineffectual. On Fitness's reading, a fitness facility could fully comply with the Facility Preparedness Act by having a functioning AED on site, training a staff member in its use, and developing an emergency medical plan, without having any obligation to implement the plan or to have the trained employee use the AED on a stricken patron under any circumstances. As the appellate court correctly noted,

> "[t]his interpretation flouts the plain language of the statutes, their expressed purposes, and common sense. As [plaintiff's] counsel aptly stated before the circuit court, Fitness's reading would allow covered facilities to be in full compliance with the statutes even if they used the AED only 'as wall art.' We must avoid construing a statute in a manner tha[t] would render it absurd, pointless, or ineffectual. *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455 (1990) ('Statutes are to be construed in a manner that avoids absurd *** results'); *People v. Hunter*, 2017 IL 121306, ¶ 28 (courts should avoid construing a statute in a manner that 'would lead to real-world results that the legislature could not have intended') [citation]." 2020 IL App (3d) 170702-U, ¶ 32.

¶ 41        Fitness argues that non-use of an AED is always simple negligence and that the allegations of plaintiff's complaint show only negligence, not willful and wanton

- 13 -

misconduct. But Fitness does not explain how the argument it now makes is even a proper subject for consideration by this court. As noted, this case is before us on a section 2-619(a)(9) motion to dismiss, which asserts other affirmative matter outside the pleadings to defeat the claim. Fitness relied upon the statutory language to argue it was immune from liability and had no duty. We have found that it does have a statutory duty, as described above, based on willful and wanton misconduct in the non-use of an AED. With respect to a section 2-619(a)(9) motion to dismiss, the question is whether plaintiff could prove any set of facts entitling him to recovery. Here, from the facts and circumstances alleged in the complaint, plaintiff could conceivably introduce evidence establishing that Fitness's employees' failure to provide AED treatment to Dollett in a timely manner after she collapsed rose to the level of willful and wanton misconduct that breached the duty that Fitness owed to Dollett, thereby proximately causing her injuries. We agree with the appellate court's assessment that, "[a]t this early stage of the litigation, such a possibility cannot be ruled out as a matter of law. Taking the allegations in [plaintiff's] complaint as true, the complaint may not be dismissed as a matter of law." See *id.* ¶ 44.

¶ 42    Having found the existence of a statutory duty to refrain from willful and wanton misconduct in the non-use of an AED, we need not consider the alternative arguments of the parties pertaining to whether a common-law duty applies.

¶ 43    Finally, we agree with the appellate court's conclusion that a private right of action exists under the Facility Preparedness Act. See *id.* ¶¶ 38-40. It is unnecessary for us to consider the issue further, however, because Fitness itself concedes in its reply brief that "[t]he [Facility Preparedness] Act contains explicit language permitting a private right of action for willful and wanton misconduct." Fitness's only other argument in that vein is that the language of the complaint alleges only negligence. But we have already rejected that contention and have ruled that the complaint survives Fitness's motion to dismiss brought under section 2-619(a)(9) of the Code.

¶ 44                                CONCLUSION

¶ 45    For the foregoing reasons, we affirm the judgment of the appellate court, which reversed the judgment of the circuit court of Will County and remanded the cause

to the circuit court for further proceedings.

¶ 46          Appellate court judgment affirmed.

¶ 47          Circuit court judgment reversed.

¶ 48          Cause remanded.

¶ 49          JUSTICE CARTER took no part in the consideration or decision of this case.