2023 IL App (2d) 220065
No. 2-22-0065
Opinion filed August 21, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff, | ) ) | |
| v. | ) ) | Nos. 07-CF-1441 07-CF-1835 |
| JAMES T. LEZINE, | ) ) | |
| Defendant-Appellee | ) ) ) | |
| (The Department of Corrections, Intervenor-Appellant). | ) ) ) | Honorable Christen L. Bishop, Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    In 2013, defendant, James T. Lezine, filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2014)). The trial court advanced the proceedings to the second stage and appointed counsel for defendant. On June 1, 2021, the court found that defendant was "unfit to communicate" with counsel. The court placed defendant in the custody of the Illinois Department of Corrections (Department). The court ordered the Department to decide on defendant's "fitness restoration treatment" and to determine the likelihood that he would become fit within one year.

¶ 2 The Department intervened and petitioned under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)) to vacate that part of the June 1, 2021, order requiring it to provide fitness-restoration treatment to defendant. The Department contended that the trial court lacked statutory authority to impose the requirement. The court denied the petition. The Department appeals. We affirm and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4 In 2008, after a jury trial, defendant was convicted in case No. 07-CF-1835 of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2006)) and two counts of aggravated criminal sexual abuse (*id.* § 12-16(b)). He was convicted in case No. 07-CF-1441 of one count of aggravated criminal sexual abuse. The court sentenced him to a total of 27 years in prison. We affirmed the convictions on direct appeal but vacated the sentences and remanded for resentencing. *People v. Lezine*, 396 Ill. App. 3d 1135 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23). On remand, in case No. 07-CF-1835, defendant was resentenced to prison terms of 13 and 11 years for predatory criminal sexual assault of a child and two 7-year terms for aggravated criminal sexual abuse—all terms to run consecutively. In case No. 07-CF-1441, he was resentenced to nine years in prison for aggravated criminal sexual abuse, to run concurrently with all sentences in case No. 07-CF-1835.

¶ 5 On September 11, 2013, defendant filed a *pro se* petition under the Act. On April 3, 2014, the trial court appointed counsel for defendant. Over seven years later, on April 27, 2021, the court found a *bona fide* doubt of defendant's fitness. The court explained that defendant's counsel had reported that defendant could not recall the charges of which he had been convicted, how long he had been in prison, or any details of his trial. The court ordered that—per section 104-13(a), (c) of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/104-13(a), (c)

(West 2020))—a doctor would evaluate defendant to determine his fitness and then submit the evaluation to the court.

¶ 6    On May 17, 2021, defendant was evaluated by a licensed clinical psychologist, Dr. Anthony Latham. His evaluation was filed on May 19, 2021. Defendant was in a wheelchair and demonstrated "right side hemiparesis," which was consistent with defendant's report that he had suffered a stroke. Defendant demonstrated "signs of impaired neurocognitive functioning consistent with the sequela of stroke." Dr. Latham opined that defendant's neurocognitive impairments "further appear to preclude his ability to engage in meaningful recollection, discussion, or collaboration with an attorney *** about the circumstances of the instant offenses, the original trial, or to retain information discussed which may be vital to his current postconviction appeal."

¶ 7    On June 1, 2021, the trial court found that defendant was "unfit to communicate with counsel in postconviction proceedings." The court placed defendant in the Department's custody for "fitness restoration treatment," with the Department to "determine the appropriate placement and provide appropriate treatment" for him. Within 30 days, the Department was to provide an opinion on the probability of defendant attaining fitness within one year of June 1, 2021. If the Department found a substantial probability of restoration, it should file a treatment plan for defendant. Alternatively, the court would hold a fitness hearing if the Department concluded either that defendant was already fit *or* there was no substantial probability that he would become fit by June 1, 2022.

¶ 8    On August 31, 2021, the Department intervened and filed a section 2-1401 petition to vacate that part of the June 1, 2021, order requiring it to provide fitness-restoration treatment to

defendant. The Department contended that the trial court had no authority to impose that obligation.

¶ 9    In his response, defendant noted that he was in the exclusive custody of the Department and could not seek treatment elsewhere. He continued, "While [the Department] does not have an affirmative statutory obligation to provide fitness restoration treatment, [it] is required to provide medical care *** to inmates." Defendant cited section 3-7-7 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/3-7-7 (West 2020)), which states:

> "The Department shall establish rules governing the provision of mental health services to committed persons. *Such rules shall provide, among other matters*, that a committed person who is diagnosed as suffering from a mental illness or developmental disability shall have access to treatment as determined necessary by a qualified mental health or developmental disability professional of the Department ***." (Emphasis added.)

Defendant argued that this provision showed that the Department is "required to have mental health professionals working within it to provide mental health services to inmates."

¶ 10    Defendant also cited section 104-17(b) of the Code of Criminal Procedure (see 725 ILCS 5/104-17(b) (West 2020)), which authorizes the trial court to commit, for treatment, defendants awaiting trial, pleading, or sentencing. He argued that this section gives the trial court "latitude to order treatment using [the Department's] healthcare resources as 'an appropriate public or private mental health facility or treatment program' [(*id.*)]." He noted that section 3-8-5(a) of the Code of Corrections (730 ILCS 5/3-8-5(a) (West 2020)) enables the Department to treat individuals subject to involuntary admission or to transfer them to the Department of Human Services (DHS) for treatment if the DHS consents.

¶ 11    In reply, the Department contended that neither section 3-7-7 of the Code of Corrections nor section 104-17(b) of the Code of Criminal Procedure requires the DHS to provide fitness-restoration treatment to postconviction petitioners.

¶ 12    The trial court denied the Department's section 2-1401 petition. The court's written judgment stated that section 3-7-7 of the Code of Corrections requires the Department to provide mental health services to incarcerated individuals who, like defendant, have been diagnosed with mental illness and found unfit to participate in judicial proceedings, including postconviction proceedings. The court acknowledged that no statute explicitly requires the Department to provide fitness-restoration treatment to postconviction petitioners. However, the court inferred the existence of such an obligation from section 3-7-7's "broad requirement for [the Department] to provide mental health services." Further, section 3-8-5 of the Code of Corrections gives the Department the power "to outsource its mental health care to the [DHS]. [Citation.] While this authority is limited to certain groups of committed persons, precedent exists for [the Department] to utilize [DHS] for mental health services that [the Department] itself is not equipped to address." The court found it of no moment that the DHS must agree to any transfer.

¶ 13    The Department filed a timely appeal.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, the Department contends that the trial court erred in ordering it to provide fitness-restoration treatment to defendant. The Department argues that neither the Act nor any other statute authorizes ordering the Department to provide fitness-restoration treatment to a postconviction petitioner.

¶ 16    Defendant does not seek affirmance based on section 3-7-7 of the Code of Corrections. He argues instead that *People v. Owens*, 139 Ill. 2d 351, 365-66 (1990), which established a

postconviction petitioner's right under the Act to a fitness hearing, also implicitly requires the Department to provide a petitioner with fitness-restoration treatment so that the right to the reasonable assistance of counsel can be realized. He also contends that it would be unjust to construe the Act to effectively prevent a petitioner found unfit from proceeding on his petition.

¶ 17    As the issue before us is purely one of statutory construction, our review is *de novo*. See *Bueker v. Madison County*, 2016 IL 120024, ¶ 13. Our goal is to ascertain and effectuate the intent of the legislature. *Id.* Normally, the best guide to this intent is the statutory language itself; if it is unambiguous, we apply it straightforwardly. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). To the extent that construction is necessary, we may consider the reason for the law, the problems to be remedied, and the objects and purposes sought. *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27. We may also compare "statutes relating to the same subject matter as well as statutes 'upon related subjects though not strictly *in pari materia*' because 'statutes are to be read in the light of attendant conditions and the state of the law existent at the time of their enactment.' " *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 470 (2010) (quoting *People v. Boreman*, 401 Ill. 566, 571-72 (1948)). We must presume that the legislature did not intend absurdity, inconvenience, or injustice. *Brucker v. Mercola*, 227 Ill. 2d 502, 532 (2007). We may affirm the judgment on any ground called for by the record, regardless of the trial court's reasoning. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11.

¶ 18    To set the issues in context, we note the following. The Act enables a prisoner to raise claims of constitutional magnitude in the proceedings that led to the prisoner's conviction or sentence. 725 ILCS 5/122-1(a)(1) (West 2020). At the first stage, the trial court decides whether to dismiss the petition as frivolous or patently without merit. *Id.* § 122-2.1(a)(2). If the court does not dismiss the petition, the proceeding moves to the second stage (*id.* § 122-2.1(b)), at which the

court may appoint counsel for an indigent defendant (*id.* § 122-4) and the State may move to dismiss the petition (*id.* § 122-5). If the court does not dismiss the petition, the proceeding moves to the final stage—an evidentiary hearing and a judgment on the merits. *Id.* § 122-6.

¶ 19     Although the United States and Illinois Constitutions guarantee a defendant the right to the effective assistance of counsel in a criminal prosecution, the right to counsel in a postconviction proceeding is purely statutory. See *Pennsylvania v. Finley*, 481 U.S. 551, 558-59 (1987); *People v. Porter*, 122 Ill. 2d 64, 73 (1988). The Act entitles a petitioner to the reasonable assistance of counsel. *People v. Lee*, 251 Ill. App. 3d 63, 64-65 (1993). Further, on a petitioner's appeal from a judgment in a postconviction proceeding, the record shall contain a showing that counsel has consulted with the petitioner to ascertain the petitioner's contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the *pro se* petition that are necessary for adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 20     We now examine *Owens*. There, the supreme court affirmed on direct appeal the defendant's convictions of armed robbery and murder and his death sentence. *Owens*, 139 Ill. 2d at 355. Later, the defendant filed a petition under the Act through retained counsel. *Id.* at 356. Retained counsel withdrew, and counsel was appointed for the defendant. *Id.* Counsel filed an amended petition. *Id.* Counsel also moved under section 104-13 of the Code of Criminal Procedure for a hearing on his fitness to assist counsel in the proceedings and on his fitness to be executed. *Id.* The trial court denied the defendant's motion, holding that the Act did not require a fitness hearing. *Id.* at 357. Moreover, a hearing on the defendant's fitness to be executed would be premature, as no execution date had been set. *Id.* After an evidentiary hearing, the court denied the defendant's petition on the merits. *Id.*

¶ 21    On appeal to the supreme court, the defendant contended in part that the trial court erred by refusing to hold a hearing to determine his fitness for postconviction proceedings. *Id.* The supreme court held first that section 104-13 did not create a right to a fitness hearing in a postconviction proceeding, as its terms applied only to a defendant's fitness to stand trial, plead, or be sentenced. *Id.* Also unavailing was section 5-2-3 of the Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, ¶ 1005-2-3), which authorized only a hearing to determine a defendant's fitness to be executed. *Id.*

¶ 22    The court then remarked that the Act itself "likewise does not [explicitly] authorize a court to conduct" a fitness hearing. *Id.* at 358. However, the court noted that section 122-4 of the Act and Rule 651(c) together entitle a petitioner to reasonable assistance of counsel. *Id.* at 359. Thus, they contemplate that appointed counsel will consult with the petitioner "to ascertain the basis of his complaints." *Id.* This obligation obviously cannot be satisfied unless the petitioner is *capable of* consultation so that counsel can ascertain his claims of constitutional deprivation. *Id.* at 359-60. A petitioner's mental unfitness "renders him incapable of communicating in a rational manner," thus precluding counsel from "raising all viable claims in the petition." *Id.* at 360. Therefore, the court held that, although nothing in the Act expressly authorizes a fitness hearing, section 122-4 and Rule 651(c) require one when the trial court finds "a *bona fide* doubt as to the petitioner's mental ability to communicate with his post-conviction counsel." *Id.* at 362. The court specified that a petitioner will be found unfit only if "he demonstrates that he, because of a mental condition, is unable to communicate with his post-conviction counsel in the manner contemplated by [section 122-4 and Rule 651(c)]." *Id.* at 363. The competence required in postconviction proceedings is lower than that required at trial, where a defendant is "confronted with the prosecutorial forces of organized society and immersed in the intricacies of the substantive and procedural law." *Id.*

¶ 23    The court held next that, if the trial court finds a *bona fide* doubt of fitness, it may order a psychological evaluation and a fitness hearing. *Id.* at 365. If, after the hearing, the court finds that the petitioner is incompetent to consult with his appointed counsel, it shall remand him to the Department until he is fit. *Id.* The court did not mention fitness-restoration treatment.

¶ 24    The court next turned to the State's argument that granting a postconviction petitioner a fitness hearing "will ultimately deprive those petitioners who are found unfit of the opportunity to seek post-conviction relief." *Id.* at 365-66. The court disagreed, explaining that "a death row inmate is [not] prohibited from having viable issues raised on his behalf simply because he may be unable to participate meaningfully in the presentation of those arguments." *Id.* at 366. The court reasoned that, even if the petitioner is unfit, "issues that are of record and not dependent upon personal information from the [petitioner] could be litigated by competent counsel." *Id.* When the petitioner attains fitness, he can "rais[e] claims that were dependent upon personal information known only to the petitioner," even if the limitations period in section 122-1 of the Act (725 ILCS 5/122-1 (West 2020)) has expired. *Owens*, 139 Ill. 2d at 366.

¶ 25    The court granted the following relief:

"[W]e vacate the circuit court's judgment and remand this cause to the trial court, so that the court may consider whether there is a *bona fide* doubt raised as to the petitioner's competency to consult with his appointed counsel. If the court determines that no *bona fide* doubt is raised, it shall reinstate its dismissal of the post-conviction petition. If the court concludes that a *bona fide* doubt is raised, it may order a psychiatric evaluation and conduct an evidentiary hearing as described above. If the court ultimately determines that the [petitioner] was not competent to consult with his appointed counsel, it shall remand the

petitioner to the Department *** until fit, as specified in section 5-2-3 of the [Code of Corrections]." *Id.*

¶ 26 Section 5-2-3, which was repealed in 1994 (see Pub. Act 88-350, § 5 (eff. Jan. 1, 1994) (repealing 730 ILCS 5/5-2-3)), provided that (1) a defendant is unfit to be executed if, because of a mental condition, he is unable to understand the nature and purpose of such a sentence (Ill. Rev. Stat. 1989, ch. 38, ¶ 1005-2-3(a)), (2) generally, "[t]he procedure for raising and deciding the [fitness] question shall be the same as that provided for raising and deciding [a defendant's] fitness to stand trial" (*id.* § 1005-2-3(b)), and (3) if the defendant is found unfit to be executed, "he shall be remanded to the custody of the Department *** until he becomes fit to be executed" (*id.* § 1005-2-3(b)(4)).

¶ 27 We now turn to the parties' arguments on appeal. The Department contends that (1) nothing in the Act authorizes the trial court to order it to provide fitness-restoration treatment to a postconviction petitioner and (2) section 3-7-7 of the Code of Corrections does not enable the court to order fitness-restoration treatment to a postconviction petitioner.

¶ 28 Defendant responds that (1) *Owens* requires affirmance—albeit not on the ground the trial court relied upon—and (2) to construe the Act as not authorizing trial courts to order fitness-restoration treatment for unfit petitioners would lead to unjust results.

¶ 29 We agree with the Department that section 3-7-7 of the Code of Corrections does not specifically require the Department to provide fitness-restoration treatment. Section 3-7-7 states only that a committed person diagnosed as suffering from a mental illness or developmental disability "shall have access to treatment *as determined necessary by a qualified mental health or developmental disability professional of the Department*." (Emphasis added.) 730 ILCS 5/3-7-7 (West 2020). This language plainly means that a committed defendant diagnosed with a mental

illness or developmental disability is entitled to such treatment as *a qualified medical professional* decides is needed.

¶ 30    By itself, section 3-7-7 does not mandate that the Department has the responsibility—and thus the ability—to provide fitness restoration treatment to inmates such as defendant and other postconviction petitioners who are found unfit. Section 3-8-5 of the Code of Corrections authorizes the Department to outsource treatment to the DHS, which is limited to inmates found subject to involuntary admission, and the transfer must be with the consent of the DHS. Thus, although the statutory scheme for mental health treatment does not itself authorize fitness-restoration treatment, it does imply that, if such treatment is (1) otherwise authorized and (2) ordered in a particular case, the Department must be the agency to provide it. If not, who would? At oral argument, the Department posited that the legislature could designate an agency to provide treatment. But in the decades since *Owens*, the legislature has declined to do so. Thus, we must have recourse to *Owens* itself in the context of legislation that is actually on the books.

¶ 31    The Department contends further that, although it is required to provide mental health treatment for its inmates, "fitness restoration treatment" encompasses more than general mental health care and includes various modalities—such as education on court processes—outlined in the DHS manual on fitness restoration (DHS Manual). Ill. Dep't of Human Servs., *Fitness Restoration Manual* 3, 6-13 (2015), https://www.dhs.state.il.us/OneNetLibrary/27896/documents/ By_Division/MentalHealth/ProviderManual/FitnessRestorationManual2015rev.pdf    [https:// perma.cc/234S-DAW8]. We disagree. As *Owens* explains, fitness for postconviction proceedings is a much lower standard than fitness for trial, pleading, or sentencing (see *Owens*, 139 Ill. 2d at 363), and we note that the DHS Manual applies only to fitness restoration for trial, pleading, or sentencing. Ill. Dep't of Human Servs., *supra*, at 2. Under *Owens*, fitness for a postconviction

petitioner is simply the ability to communicate potential claims to counsel. *Owens*, 139 Ill. 2d at 365. The additional aspects of "fitness restoration" in the DHS Manual are simply not involved. The Department-provided treatment need only restore a petitioner's ability to communicate with counsel. There is no reason to believe that such basic treatment would exceed the competence of the Department's mental health professionals.

¶ 32    The Department asserts that the Act, while providing specific protections for a postconviction petitioner, "says nothing about the Department providing [a postconviction petitioner] in its custody with fitness restoration treatment." The Department argues that we may not create such a right, given the principle that we may not read into a statute exceptions, limitations, or conditions that the legislature did not express. See *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 21.

¶ 33    The Department notes that the legislature has explicitly authorized courts to order fitness-restoration treatment for defendants awaiting trial, pleading, or sentencing who have been found unfit. Under section 104-16(d) of the Code of Criminal Procedure (725 ILCS 5/104-16(d) (West 2020)), if the trial court (or jury) finds a substantial probability that an unfit defendant can be restored to fitness within one year (or if the finder of fact cannot decide the question), "the court shall order the defendant to undergo treatment for the purpose of rendering him fit." Section 104-17 (*id.* § 104-17) explicitly provides for "treatment plan[s]" for defendants who are found unfit. See *id.* § 104-17(a) (defendants released on bail or recognizance); *id.* § 104-17(b) (defendants diagnosed with mental disabilities); *id.* § 104-17(c) (defendants with physical disabilities). The Department argues that, although the Code of Criminal Procedure enables (and indeed requires) a trial court to order fitness-restoration treatment for defendants who await trial, pleading, or sentencing, the Act does no such thing for postconviction petitioners. Thus, the Department

reasons, the legislature has shown an intent to accord a particular right to the first class of defendants but to deny it to the second class. Further, the Department argues that this choice is consistent with the less stringent requirements for fitness in the postconviction context.

¶ 34    Finally, the Department notes that section 104-17(b) enables a trial court to select the DHS or "any other appropriate public or private mental health facility or treatment program *which has agreed to provide treatment to the defendant.*" (Emphasis added.) *Id.* § 104-17(b). Thus, the Department argues—even for a mentally unfit defendant awaiting trial, pleading, or sentencing and entitled to fitness-restoration treatment—the trial court may not order *the Department* to provide that treatment unless it agrees to do so. The Department concludes that, even if postconviction petitioners are entitled to fitness-restoration treatment, it would be incongruous to require the Department to provide it when the legislature has placed no such requirement on the Department for defendants facing trial, pleading, or sentencing.

¶ 35    We agree with the Department that the Act does not explicitly authorize a trial court to order fitness-restoration treatment. Indeed, it does not explicitly authorize a trial court to order any fitness proceedings in postconviction cases. However, we are not writing on a clean slate. We are bound by *Owens*, 139 Ill. 2d at 365, and *People v. Johnson*, 191 Ill. 2d 257, 270 (2000), which hold that the Act *does* require fitness proceedings where a *bona fide* doubt has been raised as to a postconviction petitioner's fitness. The question is whether, in light of *Owens* and *Johnson*,[1] the Act's implicit right to a fitness hearing triggers a consequent right to fitness-restoration treatment if the petitioner is later found unfit.

---

[1]Neither the parties nor this court have found any other authority that is directly pertinent to the issue on appeal.

¶ 36    Defendant's primary argument is that *Owens* itself creates this requirement. Defendant notes that, in *Owens*, the supreme court held that, if a trial court finds a *bona fide* doubt of the defendant's fitness to proceed, "[t]he evidentiary hearing shall be conducted in accordance with the procedures set out in section 5-2-3" (which, as noted, governed hearings on a defendant's fitness to be executed). *Owens*, 139 Ill. 2d at 365. Also, under section 5-2-3, "a petitioner who is found incompetent shall be remanded to the Department of Corrections, rather than to the Department of Mental Health,[2] until fit." *Id.* Defendant reads the foregoing as implying that "the *Owens* court grafted the procedural requirements of section 5-2-3 onto the Act" and "clearly intended to designate the [Department], as opposed to the Department of Mental Health, as the proper entity to provide fitness restoration treatment."

¶ 37    Defendant alternatively argues that, even if *Owens* does not directly require fitness-restoration treatment, creating the right to a fitness hearing and commitment without providing a committed petitioner with fitness-restoration treatment creates an unfair and unjust result. His argument in this regard divides into two subarguments.

¶ 38    The first subargument is that, regardless of *Owens*, we should construe the Act to require fitness-restoration treatment for a petitioner who has been found unfit. Defendant reasons that if an unfit petitioner is committed without the opportunity for treatment, "[he] would simply remain imprisoned in the Department's custody, unable to avail himself of the statutory relief the legislature intended to provide for him." Consequently, the petition "would simply languish in the trial court, as it could be neither dismissed nor advanced to an evidentiary hearing."

---

[2] The Department of Mental Health and Developmental Disabilities was the DHS's predecessor.

¶ 39    Defendant contends that such a potentially avoidable delay would frustrate counsel's ability to provide reasonable assistance *and* prejudice the petitioner. He reasons that the Act contemplates filing only one petition. See *People v. Flores*, 153 Ill. 2d 264, 273 (1992). Because any claims not raised in the original petition are forfeited (*id.* at 274), counsel's inability to pursue claims that depend on the petitioner's ability to communicate personal information to counsel would make it impossible to clear the "daunting procedural hurdle" for filing a successive postconviction petition.

¶ 40    The Department replies that defendant's first subargument is unavailing because we would have to read in a provision that the legislature did not include in the Act. The Department also argues that defendant's concerns are unfounded: under *Owens*, a petitioner's unfitness would create an exception to the general rule against filing a successive petition because that inability would satisfy the "cause" prong of section 122-1(f)'s cause-and-prejudice test (see 725 ILCS 5/122-1(f) (West 2020)). Also, it would provide an exception to the rules of forfeiture or *res judicata*.

¶ 41    We note some difficulties with both parties' arguments. Defendant appears to assume that a petitioner's prolonged unfitness would somehow preclude him from raising claims that he could not communicate to counsel until fit. However, as defendant himself notes, the delay occasioned by prolonged unfitness does not result in the dismissal of the pending petition; instead, it "languishes" in the trial court indefinitely. The Department also appears to have overlooked this simple reality.

¶ 42    The Department's argument also fails to account for *Owens*. The general rule against reading in terms that the legislature did not supply did not deter the *Owens* court from reading in the requirement of a fitness hearing where it did not appear in the Act. The issue is not whether we

should read in terms but whether a binding supreme court opinion that reads in a right not provided by the legislature requires us to read in a posited consequence of that right. In essence, *Owens* is the "legislature" and we must attempt to follow its intent, consistently with the Act.

¶ 43    Defendant's argument requires an analysis of a portion of *Owens*. There, the court rejected an argument similar to defendant's here: it noted that, even if a petitioner has not been restored to fitness, (1) counsel may still raise and argue claims that do not depend on personal information known only to the petitioner and not communicable to counsel before the petitioner is restored to fitness and (2) claims that are based on the petitioner's personal knowledge may be raised once he reattains fitness, even after the limitations period of the Act has run. *Owens*, 139 Ill. 2d at 366. By implication, the court also held that forfeiture would not bar these claims, which is logical given the petitioner's inability to communicate them to counsel in the initial proceeding. The upshot of *Owens*'s holding is that a petitioner's right to the reasonable assistance of counsel does not depend on the unfit petitioner's likelihood of reattaining fitness promptly. Under *Owens*, counsel satisfies the reasonableness requirement by enabling a petitioner to proceed on claims that "are of record and not dependent upon personal information from the defendant." *Id.* Once an unfit petitioner regains fitness, he/she may raise claims that are dependent upon personal information known only to the petitioner. *Id.*

¶ 44    We recognize that the *Owens* court spoke specifically of "a death row inmate," as the defendant there was. *Id.* Moreover, the *Owens* court required the trial court to follow the procedures of section 5-2-3 of the Code of Corrections, which pertained to fitness to be executed. Section 5-2-3 was repealed in 1994. In *Johnson*, our supreme court noted that, since the repeal of "section 5-2-3 (see Pub. Act 88-350, eff. January 1, 1994)," the legislature "has not adopted a statutory provision delineating procedures for raising and determining fitness for execution, or for

determining fitness for post-conviction proceedings." *Johnson,* 191 Ill. 2d at 270. However, upon close examination, the policy behind the court's pronouncements also applies to a petitioner sentenced merely to prison. Without fitness-restoration treatment as a matter of right, there might be a greater risk that a petitioner serving less than a life sentence will be released from prison before achieving fitness and, thus, before being able to bring claims that counsel could discern only by communicating with the petitioner. Analogously, a petitioner serving a life sentence (natural or *de facto*) might suffer a greater delay in the resolution of his claims based on personal knowledge (as would be true of condemned petitioners such as the defendant in *Owens*). Thus, if fitness-restoration treatment is not a matter of right, then regardless of whether the petitioner was sentenced to death or prison (and no matter the length of that term), there is a risk to the timeliness with which a meritorious challenge will attain relief. *Owens* does not differentiate among (1) those petitioners sentenced to remain in the Department until their death and (2) those due to be released at some point, even without obtaining postconviction relief.

¶ 45    We now turn to defendant's second subargument, which we find meritorious and dispositive. Defendant contends that, although *Owens* does not explicitly authorize fitness-restoration treatment for a postconviction petitioner who has been found unfit, such a requirement is inherent in its holding that a petitioner is entitled to the reasonable assistance of counsel in the presentation of claims that depend on personal information known only to the petitioner, which must be communicated with counsel. See *Owens*, 139 Ill. 2d at 366. As *Owens* emphasizes, reasonable assistance presupposes the petitioner can communicate his claims of error to counsel. A postconviction petitioner found unfit is necessarily found to lack this ability.

¶ 46    We agree with defendant that to order commitment without the right to fitness-restoration treatment would risk creating injustice or absurdity. We may not simply assume that a petitioner

found unfit will recover spontaneously without treatment. Serious mental disorders do not usually disappear on their own. Commitment without treatment is inconsistent with a realistic probability of restoration to fitness. Thus, although *Owens* did not explicitly require fitness-restoration treatment for postconviction petitioners found unfit, we cannot envision that it would provide only commitment without treatment. We shall not ascribe to the *Owens* court an intention to confer a right that is so hollow. In this respect, defendant is correct to point out the likelihood of an unfit petitioner languishing in commitment while his claims are deferred—perhaps so long that counsel cannot present the claims even if the petitioner is restored to fitness.

¶ 47    For these reasons, we agree with defendant that *Owens* implicitly holds that, once a trial court has found a postconviction petitioner unfit, the court is authorized to order the Department to provide the petitioner with fitness-restoration treatment—with "fitness" defined per *Owens*.

¶ 48    Finally, although it does not directly concern our holding, we must address a serious matter in this case's history. We refer to an extraordinary delay not explained by the record, which shows the following. All of the following facts are drawn from the common law record, as there are no transcripts (or substitutes thereof) for any postconviction proceedings before June 1, 2021, when the trial court found defendant "unfit to communicate" with counsel.

¶ 49    On September 11, 2013, defendant filed his *pro se* postconviction petition and a motion to appoint counsel. On September 26, 2013, the cause was assigned to the Honorable Mark L. Levitt, who continued the matter. The court further continued the cause on October 30, 2013, November 15, 2013, December 20, 2013, and January 31, 2014. On February 9, 2014, defendant wrote to the circuit court clerk, noting that, because more than 90 days had elapsed since he filed the petition, the trial court could not dismiss it summarily and was required to appoint counsel for him and to proceed to the next stage under the Act. See 725 ILCS 5/122-2.1(a)(2), (b) (West 2014). On

February 28, 2014, the court ordered that the cause would proceed to stage two. On April 3, 2014, the court appointed counsel for defendant.

¶ 50   Between May 12, 2014, and April 26, 2021, the trial court continued the cause 42 times. In most instances, it is unclear on whose motion the continuance was granted. Finally, on April 27, 2021, more than seven years after the trial court appointed counsel for defendant, the court issued the order finding a *bona fide* doubt of defendant's fitness, based on conversations that counsel had had with his client earlier that month.

¶ 51   We cannot ascertain the precise causes of the extraordinary delay in the progress of this case. However, we cannot condone the result. The trial court's failure to decide within 90 days whether the *pro se* petition should be summarily dismissed was itself problematic. Unfortunately, that problem was negligible compared to what followed after advancing the cause to the next stage. Despite the appointment of counsel—who was obligated to guard his client against deprivations, including inordinate delay—the court, for whatever reasons, allowed slightly more than seven years to pass before holding any proceedings that resulted in substantive rulings advancing the cause to resolution. Eventually, the court found a *bona fide* doubt of defendant's fitness, based on his recent communications with counsel after more than half a decade of representation.

¶ 52   We know that the criminal courts carry a heavy caseload and that causes are sometimes continued extensively for a good reason. However, we also know the maxim—"Justice delayed is justice denied." We do not assert positively that this particular defendant has been denied justice by the long period between the commencement of his postconviction action and the resolution of the threshold matter of his fitness to proceed further. However, we cannot approve of the truly disturbing slowness of the proceedings.

¶ 53    We affirm the judgment, including the June 1, 2021, order requiring the Department to provide fitness-restoration treatment to defendant. We clarify that the Department shall provide this treatment until defendant's ability to communicate with counsel has been restored. Further, the trial court shall require the Department to report every 90 days on defendant's fitness and treatment status.

¶ 54    We remand with directions for postconviction counsel to amend the *pro se* petition as needed to properly present claims raised by the *pro se* petition that do not depend on personal information known only to defendant and, therefore, do not require defendant to be fit. Of course, counsel should exercise professional judgment on which of those claims to present. The State and the trial court shall then proceed accordingly. When defendant has been restored to fitness, counsel may present any claims counsel was unable to present until he could communicate with defendant.

¶ 55                                    III. CONCLUSION

¶ 56    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County and remand the cause with directions.

¶ 57    Affirmed and remanded with directions.

*People v. Lezine*, **2023 IL App (2d) 220065**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, Nos. 07-CF-1441, 07-CF-1835; the Hon. Christen L. Bishop, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Kaitlyn N. Chenevert, Assistant Attorney General, of counsel), for appellant. |
| **Attorneys for Appellee:** | John Radosevich, of Del Re Law Group, of Waukegan, for appellee. |